**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No.** 20-cv-01057-RM-SKC

ROBERT STEPHEN KRAMER,
TIMOTHY GOODRICH,
NOLTE MEHNERT, and
DONALD WAYNE LANG, each individually
and on behalf of all others similarly situated

      Plaintiffs,

      v.

ALTERRA MOUNTAIN COMPANY and
IKON PASS INC.,

      Defendants.

---

**FIRST AMENDED CLASS ACTION COMPLAINT**

---

**Introduction**

1.    Defendants Alterra Mountain Company and its fully-owned subsidiary Ikon Pass Inc. sell Ikon season ski passes. Ikon passes entitle purchasers to: "unlimited access" at listed ski resorts in Colorado (e.g., Winter Park), California (e.g., Mammoth Mountain), and throughout the United States and Canada; a set number of days of skiing at additional resorts; and other associated benefits. These promised benefits last throughout the entire ski season.

2.    Plaintiffs and hundreds of thousands of other skiers purchased Ikon passes for the 2019-2020 season. In mid-March, with months left in the ski season, ski resorts covered by the Ikon pass closed early. Ikon pass holders did not receive the benefits that they paid for.

3.    Despite not providing the promised skiing access, Defendants did not offer a refund (or even partial refund) on passes. Instead, Defendants kept all of skiers' money. With

hundreds of thousands of pass holders, this amounts to tens of millions (or more) in unjust profits.

4. Plaintiffs bring this case on behalf of themselves and the hundreds of thousands of skiers who purchased Ikon ski passes for the 2019-2020 ski season, but did not get the full benefits they paid for. Plaintiffs seek fair and reasonable compensation for Ikon pass holders.

## Parties

5. Plaintiff Robert Stephen Kramer is an individual domiciled in Villa Park, California.

6. Plaintiff Timothy Goodrich is an individual domiciled in Torrance, California.

7. Plaintiff Nolte Mehnert is an individual domiciled in Denver, Colorado.

8. Plaintiff Donald Wayne Lang is an individual domiciled in Pacifica, California.

9. The proposed class includes residents of Colorado, California, and other states.

10. Defendant Alterra Mountain Company ("Alterra") is a Delaware corporation with its headquarters and principal place of business at 3501 Wazee St., Denver, Colorado 80216. Alterra owns ski resorts in Colorado, California, and around North America.

11. Defendant Ikon Pass, Inc. is a Delaware Corporation with its headquarters and principal place of business at 3501 Wazee St., Denver, Colorado 80216. Ikon Pass, Inc. is a fully-owned subsidiary of Alterra.

## Jurisdiction and Venue

12. This Court has jurisdiction under 28 U.S.C. § 1332(d)(2). This matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which one or more members of the proposed class are citizens of a state different from any one of the Defendants.

13. Venue is proper under 28 U.S.C. § 1391(b)(1) & (2), because Defendants reside in the District of Colorado. In addition, a substantial part of the Defendants' conduct giving rise to the claims occurred in the District of Colorado.

## Facts

14. For the 2019-2020 ski season, Defendants offered Ikon season passes for sale to the general public on Defendants' website: www.ikonpass.com.

15. Defendants offered two primary versions of the Ikon pass: the "Ikon Pass" and the "Ikon Base Pass."

16. The essential terms of each offer were prominently displayed on the www.ikonpass.com website, including the "shop passes" pages. The "shop passes" pages for the 2019-2020 season are partially still available on the website. For example, for the Ikon Pass:



https://www.ikonpass.com/en/shop-passes/ikon-pass-2019-2020

3



https://www.ikonpass.com/en/shop-passes/ikon-pass-2019-2020

17. And for the Ikon Base Pass:



https://www.ikonpass.com/en/shop-passes/ikon-base-pass-2019-2020



https://www.ikonpass.com/en/shop-passes/ikon-base-pass-2019-2020

18.     Pricing terms for 2019-2020 season passes are no longer displayed on the website. Below are further examples of the layout for next season (2020-2021), which includes pricing terms.  Although the layout may have differed and the prices were different, the pricing was also prominently displayed at all times when the 2019-2020 season pass was on sale and class members purchased their passes.  (The 4-day pass was not offered for the 2019-2020 season).



https://www.ikonpass.com/en/shop-passes



https://www.ikonpass.com/en/shop-passes/ikon-pass-2020-2021



https://www.ikonpass.com/en/shop-passes/ikon-pass-2020-2021



https://www.ikonpass.com/en/shop-passes/ikon-pass-2020-2021

19.     For the 2019-2020 season, the full price of the Ikon Base Pass was $649.[1] In exchange for paying this amount, purchasers would receive "unlimited access" to "ski or ride as many days as you want" at 12 resorts (subject to "limited blackout dates at select destinations," which included major ski holidays). Most of these resorts are owned by Alterra. In addition, purchasers would receive "up to 5 days" at an additional 28 resorts with "limited blackout dates."

---

[1] As explained below, Alterra offered certain discounts on the full price of its season passes, for example a veteran discount. In addition, pass prices increased for later purchasers (e.g., for passes purchased after October 2019).

20. The full price of the Ikon Pass was $949. [2] In exchange, purchasers received "unlimited access" to 14 resorts (most owned by Alterra) and "up to 7 days" at an additional 26 resorts, with "no blackout dates."

21. The website provided the ability to add a pass to a shopping cart and check out. When a purchaser of an Ikon pass selected a pass, added it to his or her cart, submitted the transaction, and paid for the pass, this constituted acceptance of the offer on the website and formed a contract between that purchaser and Defendants.

22. Each class member selected and paid for an Ikon pass. This constituted acceptance of Defendants' offer and formed a contract between Defendants and each class member.

23. Defendant Alterra Mountain Company ("Alterra") is a party to the contract with each class member. Alterra made the offer described above that, when accepted by a class member, formed a contract between Alterra and that class member. According to an Alterra press release, the Ikon pass is "[b]rought to you by Alterra Mountain Company." [3]

24. In addition or in the alternative, Defendant Ikon Pass, Inc. made the offer described above while acting as an agent of Alterra. The Ikon pass website appears to be operated, at least in part, by Alterra subsidiary Ikon Pass, Inc. For example, the website copyright states "Ikon Pass, Inc." When a pass offer was accepted by a class member, it formed a contract between Alterra and that class member. In addition, or in the alternative, when that offer was accepted by the purchaser, it formed a contract between Ikon Pass, Inc. and the class member.

---

[2] Pass prices increased for later purchasers (e.g., for passes purchased after October 2019).

[3] https://www.alterramtnco.com/news/2019/02/26/19-20-ikon-pass-launch-release

25. Plaintiff Robert Stephen Kramer purchased an Ikon Base Pass through the Ikon website in April 2019. He paid $619 (applying a $30 renewal discount to the price of $649).

26. Plaintiff Timothy Goodrich purchased an Ikon Base Pass through the Ikon website in March 2019. As a veteran, he received a military discount of $160. After applying this discount to the $649 price, he paid $489.

27. Plaintiff Nolte Mehnert purchased an Ikon Base Pass (Young Adult) through the Ikon website in November 2019. He paid $639 (the Young Adult price for passes purchased after October 2019).

28. Plaintiff Donald Wayne Lang purchased an Ikon Base Pass in April 2019. He paid $619 (applying a $30 renewal discount to the price of $649).

29. On March 14, 2020, Alterra announced that all its North American resorts would be closed until further notice and immediately closed each of its resorts. Around the same time, other resorts to which Ikon pass holders were promised access also closed.

30. The resorts closed well before the end of the ski season. For example, the season at Winter Park typically runs into late April or May or later. The season at Mammoth Mountain, California typically runs into June or July or later.

31. As a result, for a large portion of the ski season, Defendants did not provide pass holders with the promised unlimited resort access (or any access).

32. Defendants have not offered to return, and have not returned, any portion of season pass fees.

### Class Action Allegations

**The proposed class and subclass.**

33. It is appropriate to include Ikon Pass and Ikon Base Pass purchasers in the same class. Both groups formed a substantially similar contract with Defendants. The core benefits of

9

the Ikon Pass and Base Pass were substantially the same: unlimited access to Ikon resorts, with limited additional ski days at other destinations. Both groups allege the same breach, and related claims. Both groups seek the same type of relief: compensation for the early termination of pass benefits. There are no conflicts of interest between these groups.

34. Accordingly, Plaintiffs bring this action on behalf of the proposed class of: all individuals who purchased an Ikon Pass (including the Ikon Pass and Ikon Base Pass) for the 2019-2020 ski season (the "National Class").

35. In addition, for the California Unfair Competition Law claim (alleged below), Plaintiffs bring this action on behalf of the proposed class of: all individuals who (a) purchased an Ikon Pass (including the Ikon Pass and Ikon Base Pass for the 2019-2020 ski season); and (b) who reside in California or purchased an Ikon Pass while in California (the "California Subclass").

36. The following people are excluded from the National Class and California Subclass: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**Numerosity.**

37. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are hundreds of thousands of proposed class members. Indeed, for the 2018-2019 season, Defendants projected that 250,000 Ikon passes would be sold.

**Commonality.**

38. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

   i. The terms of the contract formed between Ikon pass holders and Defendants;

   ii. Whether Defendants breached this contract by failing to provide pass benefits for the duration of the ski season;

   iii. Damages needed to reasonably compensate pass holders;

   iv. Whether Defendants were unjustly enriched by keeping all pass fees after providing resort access for only a portion of the ski season;

   v. The terms of an express warranty provided by Defendants to pass holders, that formed a part of the basis of the bargain.

   vi. Whether Defendants converted pass holders' property by retaining pass fees after resorts closures;

   vii. Whether Defendants wrongfully retained money had and received from pass holders by retaining pass fees after resorts closures;

   viii. For the California Subclass, whether Defendants' refusal to refund pass fees violated California Unfair Competition Law.

**Typicality.**

39. Plaintiffs' claims are typical of the proposed class. Like the proposed class, Plaintiffs purchased an Ikon pass (a Base Pass) for the 2019-2020 season. Like the proposed class, Plaintiffs lost access to Ikon resorts before the end of the ski season and seek reasonable compensation for this loss. And as explained above, purchasers of the Base Pass and Ikon Pass formed a substantially similar contract with Defendants. The core benefits of the Ikon Pass and Base Pass were substantially the same: unlimited access to Ikon resorts, with limited additional ski days at other destinations. Plaintiffs allege the same breach, and other claims, as the proposed class. Plaintiffs seek the same type of relief: compensation for the early termination of pass benefits.

**Adequacy.**

40. Plaintiffs will fairly and adequately protect the interests of the proposed class. Plaintiffs' interests are aligned with the interests of the proposed class members: plaintiffs seek reasonable compensation for Defendants' breach and other alleged wrongs. Plaintiffs are represented by experienced class counsel who are prepared to vigorously litigate this case through judgment and appeal. There are no conflicts of interest between Plaintiffs and the class.

**Predominance and Superiority.**

41. The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that breach of the same contract is found for some proposed class members, but not others.

42. Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from certain central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member. For example, a core liability question is common: whether Defendants breached their contract with Ikon pass holders by failing to offer unlimited access to Ikon resorts throughout the ski season.

43. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

44. The proposed class is readily ascertainable. The precise number and identity of proposed class members can be determined with specificity from Defendants' sales records.

### Claims

### Claim 1: Breach of Contract (National Class)

45. Plaintiffs allege this claim individually and on behalf of the proposed National Class.

46. Plaintiffs incorporate the allegations in paragraphs 1 - 44 above.

47. A valid contract existed between Plaintiffs and Defendants. The contract, as alleged above, entitled Plaintiffs to unlimited access to Ikon resorts throughout the ski season (among other benefits).

48. Plaintiffs performed all their contractual obligations.

49. Defendants breached by failing to provide Plaintiffs with access to Ikon resorts, for a substantial portion of the ski season.

50. Defendants' breach was the proximate cause, and a substantial factor, in causing losses and damage to Plaintiffs.

**Claim 2: Breach of the implied covenant of good faith and fair dealing (National Class)**

51. Plaintiffs allege this claim individually and on behalf of the proposed National Class.

52. Plaintiffs incorporate the allegations in paragraphs 1 - 44 above.

53. Defendants had an implied duty of good faith and fair dealing to provide access to ski resorts throughout the ski season and to return pass fees if pass benefits were terminated early.

54. Defendants violated this duty by failing to provide resort access, for a substantial portion of the season, and by not returning any pass fees.

55. Defendants' breach was the proximate cause, and a substantial factor, in causing losses and damage to Plaintiffs.

**Claim 3: Unjust enrichment (National Class)**

56. Plaintiffs allege this claim individually and on behalf of the proposed National Class.

57. Plaintiffs incorporate the allegations in paragraphs 1 - 44 above.

58. Defendants received a benefit (Ikon pass fees) at Plaintiffs' expense.

59. It would be unjust for Defendants to retain all pass fees, when Defendants failed to provide resort access for a substantial portion of the ski season.

60. Defendants' unjust conduct was the proximate cause, and a substantial factor, in causing losses and damage to Plaintiffs.

### Claim 4: Breach of express warranty (National Class)

61. Plaintiffs allege this claim individually and on behalf of the proposed National Class.

62. Plaintiffs incorporate by reference the allegations in paragraphs 1 - 44 above.

63. Defendants created an express warranty through affirmative website statements, alleged above, that Ikon passes would in fact provide "unlimited access" to resorts throughout the ski season.

64. This warranty was part of the basis of the bargain. The prominent display of this warranty on the website was intended to induce, and did induce, purchasers to rely upon it. Plaintiffs relied on this warranty in deciding to purchase an Ikon Pass and would not have purchased an Ikon Pass if they had known that Defendants would in fact terminate access to resorts with months remaining in the ski season and then keep all pass fees.

65. Defendants breached this express warranty by failing to provide access to Ikon resorts for a substantial portion of the ski season.

66. Defendants' breach was the proximate cause, and a substantial factor, in causing losses and damages to Plaintiffs.

### Claim 5: Conversion (National Class)

67. Plaintiffs allege this claim individually and on behalf of the proposed National Class.

68. Plaintiffs incorporate by reference the allegations in paragraphs 1 - 44 above.

69. After the early closure of resorts and the loss of pass benefits, Plaintiffs had a right to the return of pass fees proportional to the benefits and value lost.

70. Plaintiffs never authorized Defendants to retain all pass fees after the closure of resorts.

71. When Defendants retained pass fees after the early closure of resorts, this was an intentional, distinct, unauthorized act of dominion or ownership exercised over money rightly belonging to Plaintiffs.

72. Plaintiffs have, through the filing of this lawsuit or other communications with Defendants, demanded the return of wrongfully retained pass fees. In the alternative, it would have been futile to do so because Alterra publicly announced that it would not be providing any refunds of pass fees.

73. Defendants have refused to return pass fees for any pass holder.

74. The money that Plaintiffs paid for an Ikon Pass can be traced through Defendants' payment systems.

75. Defendants' wrongful retainment of pass fees was a substantial factor and proximate cause in causing losses and damages to Plaintiffs.

### Claim 6: Money had and received (National Class)

76. Plaintiffs allege this claim individually and on behalf of the proposed National Class.

77. Plaintiffs incorporate by reference the allegations in paragraphs 1 - 44 above.

78. Defendants received pass fees from Plaintiffs, in exchange for a full ski season of pass benefits.

79. Plaintiffs' pass fees were intended to be used to benefit Plaintiffs by exchanging these fees for resort access.

80. When resorts closed early, retained pass fees were no longer used to benefit plaintiffs and were not returned.

81. Equity and good conscience requires Defendants to return pass fees proportionate to lost pass benefits and value.

82. Defendants have refused to return any pass fees.

83. Defendants' wrongful retainment of pass fees was a substantial factor and proximate cause in causing losses and damages to Plaintiffs.

### Claim 7: Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. (California Subclass)

84. Plaintiffs Kramer, Goodrich and Lang (the "California Plaintiffs") allege this claim individually and on behalf of the proposed California Subclass.

85. Plaintiffs incorporate by reference the allegations in paragraphs 1 - 44 above.

86. California Unfair Competition Law forbids any "unlawful, unfair or fraudulent business act or practice."

87. Defendants engaged in "unfair" business acts by retaining all pass fees after the early closure of resorts.

88. This practice was immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Defendants took consumers' money without providing fair value.

89. By retaining pass fees, Defendants caused substantial financial injury to the California Plaintiffs.

90. The harm to consumers greatly outweighs the public utility of Defendants' conduct (which is zero).

91. This injury to pass holders is not outweighed by any countervailing benefits to consumers or competition.  To the contrary, Defendants' conduct benefitted only Defendants by allowing Defendants to wrongfully retain tens of millions of dollars in pass fees, despite failing to provide a full ski season.

92. The California Plaintiffs could not have reasonably avoided this injury.  There are no comparable competing passes offered to the Ikon pass resorts (much less comparable passes that refunded pass fees when resorts closed early).

93. Defendants' unfair business practices were a substantial factor and proximate cause in causing losses and damages to the California Plaintiffs.

## Jury Demand

Plaintiffs demand a jury trial on all issues so triable.

## Prayer for Relief

Plaintiffs seek the following relief for themselves and for the proposed class:

    a) An order certifying the asserted claims, or issues raised, as a class action;

    b) A judgment in favor of Plaintiffs and the proposed class;

    c) Damages;

    d) Restitution;

    e) Rescission;

    f) Disgorgement, and other just equitable relief;

    g) Pre- and post-judgment interest;

    h) Reasonable attorneys' fees and costs;

    i) Any additional relief that the Court deems reasonable and just.

Case 1:20-cv-01057-RM-SKC   Document 25   Filed 05/18/20   USDC Colorado   Page 19 of 19

May 18, 2020

*s/ Jonas Jacobson*

Jonas Jacobson
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: (310) 656-7066
Fax: 310-656-7069
E-mail: jonas@dovel.com
Counsel for Plaintiffs