**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 20-cv-01254
(Consolidated and filed in lead case number 1:20-cv-01057-RM-SKC)

PHILLIP WERNER, RYAN COLLINS,
BRADLEY BRIAR, ERIK ERNSTROM,
ROBERT LOMBARDINI, JAYCELLE
MARSHALL, KIM KURPJUWEIT,
SHANNON MCNAMARA, JEFFREY
FARRELL, JAMES SUTCLIFFE, ERIC
GIFFORD, ERICK MCQUILLIN, AARON
BATT, LINH BUI, CHRISTOPHER REED,
DOUGLAS FULLER,  W. WALTER
LAYMAN, CALLAN KOFOID, and KERI
REID, Individually and On Behalf of All
Others Similarly Situated,

                Plaintiffs,

    v.

ALTERRA MOUNTAIN COMPANY and
IKON PASS INC.,

                Defendants.

DEMAND FOR JURY TRIAL

---

**AMENDED CLASS ACTION COMPLAINT**

---

Plaintiffs PHILLIP WERNER, RYAN COLLINS, BRADLEY BRIAR, ERIK

ERNSTROM, ROBERT LOMBARDINI, JAYCELLE MARSHALL, KIM KURPJUWEIT,

SHANNON MCNAMARA, JEFFREY FARRELL, JAMES SUTCLIFFE, ERIC GIFFORD,

ERICK MCQUILLIN, AARON BATT, LINH BUI, CHRISTOPHER REED, DOUGLAS

FULLER, W. WALTER LAYMAN, CALLAN KOFOID, and KERI REID (collectively,

"Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action

against ALTERRA MOUNTAIN COMPANY and IKON PASS INC. (collectively, "Defendants" or "Alterra") and respectfully allege the following:

## NATURE OF ACTION

1.      Defendants Alterra Mountain Company and its wholly-owned subsidiary Ikon Pass Inc. marketed and sold the Ikon Pass and Ikon Base Pass (collectively, the "Passes") for the 2019-20 ski season, which Defendants represented would last into July 2020 (the "2019-20 Ski Season"). Alterra promised that its Ikon Pass provided "unlimited access at 14 iconic destinations" and also provided up to 7 days each at another 26 "select global destinations" with "no blackout dates."[1]

2.      On March 14, 2020, Alterra publicly announced that due to the COVID-19 outbreak, as of March 15, 2020 all of its North American ski resorts (the "North American Ski Resorts") would be closed until further notice (the "Alterra Closure").

3.      Alterra did not offer refunds to purchasers of the Passes (collectively, "Pass Holders") due to their inability to use their Passes for the remainder of the 2019-20 Ski Season, but instead have retained the payments made by Pass Holders.

4.      Plaintiffs bring this class action suit on behalf of themselves and all others similarly situated to seek redress for Defendants' refusal to refund fees after they closed all of their North American Ski Resorts, well short of the promised duration of the 2019-20 Ski Season. Alterra collected fees from skiers, snowboarders (also referred to herein as "riders"), and others, but then deprived them of the promised "unlimited" skiing and snowboarding.

## PARTIES

5.      Plaintiff Phillip Werner is a citizen of Colorado and resides in Denver, Colorado. Mr. Werner purchased an Ikon Base Pass from Defendants for the 2019-20 Ski Season. Due to

---

[1] https://www.ikonpass.com/en/shop-passes/ikon-pass-2019-2020 (last accessed July 7, 2020).

the Alterra Closure, Plaintiff Werner was prevented from using the entire value of his Ikon Base Pass.

6.      Plaintiff Ryan Collins is a citizen of Illinois and resides in Malta, Illinois. Mr. Collins purchased an Ikon Base Pass from Defendants for the 2019-20 Ski Season. Due to the Alterra Closure, Plaintiff Collins was prevented from using the entire value of his Ikon Base Pass.

7.      Plaintiff Bradley Briar is a citizen of Illinois and resides in Tinley Park, Illinois. Mr. Briar purchased an Ikon Base Pass from Defendants for the 2019-20 Ski Season.  Due to the Alterra Closure, Plaintiff Briar was prevented from using the entire value of his Ikon Base Pass.

8.      Plaintiff Erik Ernstrom is a citizen of Colorado and resides in Longmont, Colorado. Mr. Ernstrom purchased an Ikon Base Pass from Defendants for the 2019-20 Ski Season. Due to the Alterra Closure, Plaintiff Ernstrom was prevented from using the entire value of his Ikon Base Pass.

9.      Plaintiff Robert Lombardini is a citizen of Colorado and resides in Denver, Colorado. Mr. Lombardini purchased Ikon Passes for himself and his girlfriend from Defendants for the 2019-20 Ski Season. Due to the Alterra Closure, Plaintiff Lombardini was prevented from using the entire value of his Ikon Passes.

10.      Plaintiff Jaycelle Marshall is a citizen of Colorado and resides in Golden, Colorado. Ms. Marshall purchased Ikon Base Passes for herself, her husband, and her daughter from Defendants for the 2019-20 Ski Season. Due to the Alterra Closure, Plaintiff Marshall was prevented from using the entire value of her Ikon Base Passes.

11.      Plaintiff Kim Kurpjuweit is a citizen of California and resides in Morro Bay, California. Mr. Kurpjuweit purchased an Ikon Base Pass from Defendants for the 2019-20 Ski

3

Season. Due to the Alterra Closure, Plaintiff Kurpjuweit was prevented from using the entire value of his Ikon Base Pass.

12.     Plaintiff Shannon McNamara is a citizen of California and resides in Los Osos, California. Mr. McNamara purchased an Ikon Base Pass from Defendants for the 2019-20 Ski Season. Due to the Alterra Closure, Plaintiff McNamara was prevented from using the entire value of his Ikon Base Pass.

13.     Plaintiff Jeffrey Farrell is a citizen of Minnesota and resides in White Bear Lake, Minnesota. Mr. Farrell purchased an Ikon Pass from Defendants for the 2019-20 Ski Season. Due to the Alterra Closure, Plaintiff Farrell was prevented from using the entire value of his Ikon Pass.

14.     Plaintiff James Sutcliffe is a citizen of Minnesota and resides in St. Louis Park, Minnesota. Mr. Sutcliffe purchased an Ikon Pass from Defendants for the 2019-20 Ski Season. Due to the Alterra Closure, Plaintiff Sutcliffe was prevented from using the entire value of his Ikon Pass.

15.     Plaintiff Eric Gifford is a citizen of Missouri and resides in Springfield, Missouri. Mr. Gifford purchased Ikon Base Passes from Defendants for himself and his family members for the 2019-20 Ski Season. Due to the Alterra Closure, Plaintiff Gifford and his family were prevented from using the entire value of their Ikon Base Passes.

16.     Plaintiff Erick McQuillin is a citizen of Montana and resides in Helena, Montana. Mr. McQuillin purchased an Ikon Pass from Defendants for the 2019-20 Ski Season. Due to the Alterra Closure, Plaintiff McQuillin was prevented from using the entire value of his Ikon Pass.

17.     Plaintiff Aaron Batt is a citizen of Nebraska and resides in Omaha, Nebraska. Mr. Batt purchased an Ikon Pass from Defendants for the 2019-20 Ski Season. Due to the Alterra Closure, Plaintiff Batt was prevented from using the entire value of his Ikon Pass.

18.     Plaintiff Linh Bui is a citizen of Ohio and resides in Columbus, Ohio. Ms. Bui purchased an Ikon Base Pass from Defendants for the 2019-20 Ski Season. Due to the Alterra Closure, Plaintiff Bui was prevented from using the entire value of her Ikon Base Pass.

19.     Plaintiff Christopher Reed is a citizen of Ohio and resides in Columbus, Ohio. Mr. Reed purchased an Ikon Base Pass from Defendants for the 2019-20 Ski Season. Due to the Alterra Closure, Plaintiff Reed was prevented from using the entire value of his Ikon Base Pass.

20.     Plaintiff Douglas Fuller is a citizen of Utah and resides in Salt Lake City, Utah. Mr. Fuller purchased an Ikon Base Pass from Defendants for the 2019-20 Ski Season. Due to the Alterra Closure, Plaintiff Fuller was prevented from using the entire value of his Ikon Base Pass.

21.     Plaintiff W. Walter Layman is a citizen of Utah and resides in Park City, Utah. Mr. Layman purchased an Ikon Base Pass from Defendants for the 2019-20 Ski Season. Due to the Alterra Closure, Plaintiff Layman was prevented from using the entire value of his Ikon Base Pass.

22.     Plaintiff Callan Kofoid is a citizen of Wisconsin and resides in Minocqua, Wisconsin. Mr. Kofoid purchased an Ikon Pass from Defendants for the 2019-20 Ski Season. Due to the Alterra Closure, Plaintiff Kofoid was prevented from using the entire value of his Ikon Pass.

23.     Plaintiff Keri Reid is a citizen of Wisconsin and resides in Minocqua, Wisconsin. Ms. Reid purchased an Ikon Pass from Defendants for the 2019-20 Ski Season. Due to the Alterra Closure, Plaintiff Reid was prevented from using the entire value of her Ikon Pass.

24.     Defendant Alterra Mountain Company is a Delaware corporation, with its principal place of business in Denver, Colorado. Alterra Mountain Company, among other things, owns and operates ski resorts in North America.

25.     Defendant Ikon Pass, Inc. is a Delaware corporation, with its principal place of business in Denver, Colorado. Ikon Pass, Inc. is a wholly-owned subsidiary of Alterra Mountain Company and it sells the Passes to customers such as Plaintiffs and Class Members.

### FACTS

26.     Alterra owns and operates 15 North American Ski Resorts, including destinations such as Squaw Valley, Alpine Meadows and Mammoth Mountain in California, Steamboat and Winter Park Resort in Colorado, Deer Valley Resort in Utah, and several others.

27.     In addition to daily lift tickets, Defendants marketed and sold two types of passes for the 2019-20 Ski Season, the Ikon Pass and the Ikon Base Pass. The Passes grant the purchasers varying degrees of access to not only the 15 ski resorts owned and operated by Alterra, but also several others in North America and beyond.

28.     According to Alterra, "The Ikon Pass unlocks adventure with access to 38 iconic winter destinations across the Americas, Japan, Australia and New Zealand and is a collaboration of industry leaders - Alterra Mountain Company, Aspen Skiing Company, Boyne Resorts, POWDR, Jackson Hole Mountain Resort, Alta Ski Area, Snowbird, SkiBig3, Revelstoke Mountain Resort, Sugarbush Resort, Thredbo, Niseko United, Valle Nevado, and NZ Ski. Each demonstrates integrity, character and independence that is reflected in their mountains and guests."[2]

---

[2] https://www.alterramtnco.com/news/2019/02/26/19-20-ikon-pass-launch-release.html (last accessed  July 7, 2020).

29.     In selling the Passes for the 2019-20 Ski Season, Alterra represented to and promised purchasers of the Ikon Pass "unlimited access" to 14 ski resorts, seven days of access each at another 16 ski resorts, and a combined seven days of access at seven other ski resorts, all "with no blackout dates." The Ikon Pass cost $949 for adults, $699 for young adults, $199 or $299 for children, and $49 for children aged 4 and under.[3]

30.     Similarly, Alterra represented to and promised purchasers of the Ikon Base Pass "unlimited/select access" to 12 ski resorts, five days of access each at another 19 ski resorts, and a combined five days of access at six other ski resorts with "holiday blackout periods." The Ikon Base Pass cost $649 for adults, $499 for young adults, $159 or $259 for children, and $49 for children aged 4 and under.[4]

31.     Because the individual daily rates for ski and snowboard passes are high, customers who anticipate skiing or riding a number of days will assess their own needs and purchase the appropriate Pass. Many people take Spring Break ski vacations in March and April. For them, the cost effective way to purchase lift tickets was to purchase one type of Ikon Pass.

32.     Defendants touted the extended length of the ski and snowboard season at their North American Ski Resorts as a benefit to prospective purchasers of the Passes. For instance, in an article published on March 6, 2019, Defendants stated that one of their North American Ski Resorts, Squaw Valley Alpine Meadows "plans to once again host the longest ski season in Tahoe."[5] That article stated that the Squaw Valley ski resort "plans to operate…until July 7 [2019]." In the same paragraph, the article markets that "the 2019-20 Ikon Pass is now on sale"

---

[3] *Id.*
[4] *Id.*
[5] https://squawalpine.com/explore/blog/squaw-valley-alpine-meadows-extending-season-july-7 (last accessed  July 7, 2020).

and includes a hyperlink to the ikonpass.com website where customers could purchase the Passes.

33.     Likewise, another of Defendants' North American Ski Resorts, Mammoth Mountain, in recent years remained open into June, July, and even August.

34.     On March 14, 2020, without any prior notification to Plaintiffs or Class Members, Defendants initiated the Alterra Closure by abruptly suspending all operations at their North American Ski Resorts. In its March 14, 2020 announcement, Alterra Mountain Company's Chief Executive Officer stated that Alterra "will suspend operations at our 15 North American ski resorts, starting the morning of Sunday, March 15, until further notice. All lift operations, food and beverage, retail and rental services will be closed until further notice."[6]

35.     By closing all of their North American Ski Resorts effective March 15, 2020, Defendants deprived Plaintiffs and Class Members of over one-third of the 2019-20 Ski Season.

36.     As part of the Alterra Closure, Defendants eliminated virtually all employees to greatly reduce their operating costs.

37.     Thus, Defendants have eliminated virtually all of their costs of operating their North American Ski Resorts, yet have refused to refund any portion of the price paid for the Passes by Plaintiffs and the Class Members, which Passes were purchased with Defendants' representations they could be used for the full duration of the 2019-20 Ski Season into the summer of 2020. Instead, Defendants have retained 100% of the fees paid by Plaintiffs and Class Members for their Passes even after Defendants closed their North American Ski Resorts after only about two-thirds of the 2019-20 Ski Season had occurred.

---

[6] https://www.alterramtnco.com/news/2020/03/14/alterra-mountain-company-closure-announcement (last accessed  July 7, 2020).

38.      Rather than offer to refund any of the price paid by Plaintiffs and Class members, Defendants offered to double the "renewal discount" for Passes for the 2020-21 season. Thus, Defendants offered 2019-20 Pass Holders a discount of $100 for 2020-21 Ikon Passes (in addition to the normal $100 for early purchase) and a discount of $50 for 2020-21 Ikon Base Passes (in addition to the normal $50 offered for early purchase).[7] Defendants initially required that 2020-21 Passes must have been purchased prior to May 27, 2020 to receive the increased "renewal discount." Defendants later extended the deadline to June 16, 2020.

39.      Thus, to get the alleged "benefit" of the discount for the Passes, Plaintiffs and the Class Members must spend more money to renew a Pass that they may neither want nor use. Absent spending more money to purchase a 2020-21 Pass, Plaintiff and Class Members receive no "benefit" whatsoever. Meanwhile, during a time of historic economic uncertainty and record unemployment including, on information and belief, Class Members, Defendants refuse to refund to Plaintiffs and Class Members their overpayment for the Passes. Instead, Defendants unlawfully continue to retain the entire purchase price paid by Plaintiffs and Class Members for the Passes.

40.      Plaintiffs seek relief in this action individually, and on behalf of all of Defendants' customers nationwide that purchased Ikon Passes or Ikon Base Passes for the 2019-20 Ski Season. Plaintiffs seek relief for themselves and all Class Members for Defendants' breach of contract, breach of express warranties, negligent misrepresentation, unjust enrichment, and conversion as well as violations of state consumer protection statutes

---

[7] https://www.alterramtnco.com/news/2020/04/14/ikon-pass-announces-updates-to-20-21-season-passes (last accessed July 7, 2020).

**JURISDICTION AND VENUE**

41.     This Court has subject matter jurisdiction over this controversy pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (a) the proposed Class, defined below, consists of more than one hundred members; (b) the parties are minimally diverse, as members of the proposed Class are citizens of states different than Defendants' home state; and (c) the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs.

42.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

43.     This Court has personal jurisdiction over Defendants because Defendants' principal places of business are within this District.

44.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants maintain their principal place of business within the District and a substantial part of the events giving rise to Plaintiffs' claims occurred here.

**CLASS ACTION ALLEGATIONS**

45.     Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages on behalf of themselves and Class Members nationwide:

> All persons in the United States who purchased for the 2019-20
> Ski Season an Ikon Pass or an Ikon Base Pass.

46.     Excluded from the Class are: a) any Judge or Magistrate presiding over this action and members of their families; b) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees; c) persons who properly execute and file a timely request for

exclusion from the Class; d) the legal representatives, successors or assigns of any such excluded persons; and e) all persons who have previously had claims finally adjudicated or who have released their claims against Defendants similar to those alleged herein.

47.     If necessary or alternatively, Plaintiffs also seek to represent subclasses of individuals who purchased passes from Defendants in each of the 50 states and U.S. territories (*e.g.*, the Illinois, California, Minnesota, Missouri, Montana, Nebraska, Ohio and Wisconsin Subclasses).

48.     Collectively, unless otherwise so stated, the above-defined classes and subclasses are referred to herein as the "Class."

49.     Plaintiffs reserve their right to amend the Class definitions if discovery or further investigation reveals that any Class should be expanded or narrowed, divided into additional subclasses under Rule 23(c)(5), or modified in any other way

50.     While the exact number and identities of the Class Members are unknown at this time, and can only be ascertained through appropriate discovery, on information and belief, the Class is so numerous that joinder of all Class Members is impracticable. Also, on information and belief, all Class Members are readily identifiable since Defendants maintain electronic records of all Pass Holders' identity and contact information.

51.     Common questions of law and fact exist as to all members of the Class. Such questions of law and fact common to the Class include, but are not limited to, whether Defendants breached their contract and/or their warranty with their Pass customers, whether Defendants negligently made misrepresentations, whether Defendants were unjustly enriched, whether Defendants are liable for conversion, and whether Defendants violated certain state consumer protection statutes.

52.     Plaintiffs' claims are typical of the claims of all Class Members because such claims arise from Defendants' wrongful conduct, as alleged above. Plaintiffs have no interests that conflict with the interests of the other Class Members.

53.     Questions of law and fact common to all Plaintiffs and Class Members predominate over any questions affecting only individual Class Members, including legal and factual issues relating to liability and damages.

54.     Plaintiffs will fairly and adequately represent and protect the interests of the Class Members. Plaintiffs have retained competent counsel experienced in complex commercial litigation and class actions to represent themselves and the Class.

55.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

56.     Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class members' claims compared to the anticipated costs of the litigation, it is likely that only a few, if any, Class members could afford to seek legal redress for the harms caused by Defendants' actions.

## COUNT I
### Nationwide Class
### Breach of Contract

57.     Plaintiffs hereby repeat and reallege the allegations contained in paragraphs 1 through 56 above of this complaint, as if fully alleged herein.

58.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class arising from their purchases of Passes from Defendants.

59.     Defendants offered the Passes to Plaintiffs and Class Members to provide access, including skiing and riding, to their North American Ski Resorts for the entire duration of the 2019-20 Ski Season into the 2020 summer in exchange for Plaintiffs' and Class Members' payment in full of Pass fees.

60.     Each Plaintiff and all Class Members accepted Defendants' contractual offer and fully performed and complied with all conditions precedent including full payment to Defendants for the Passes.

61.     Defendants breached these contracts by retaining Plaintiffs' and Class Members' Pass fees while all of their North American Ski Resorts remain closed, terminating over one-third of the 2019-20 Ski Season that Defendants contractually promised to Plaintiffs and Class Members. Plaintiffs and Class Members have suffered an injury through the full payment of Pass fees, without a refund, while not having the contractually promised duration of ski and snowboard access to Defendants' North American Ski Resorts.

## COUNT II
### Nationwide Class
### Breach of Express Warranty

62.     Plaintiffs hereby repeat and reallege the allegations contained in paragraphs 1 through 56 above of this complaint, as if fully alleged herein.

63.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class arising from their purchases of Passes from Defendants.

64.     In connection with their sale of the Passes, Defendants made an express warranty that customers would have unlimited access to their North American Ski Resorts for the entire duration of the 2019-20 Ski Season into the 2020 summer.

65.     Defendants' affirmation of fact and promise in their marketing, web pages, and signage became part of the basis of the bargain between Defendants and Plaintiffs and Class Members, thereby creating express warranties that the services would conform to Defendants' affirmations of fact, representations, promises, and descriptions.

66.     Each Plaintiff and all Class Members fully performed and complied with all conditions precedent including full payment to Defendants for the Passes.

67.     Defendants breached their express warranty by failing to provide Pass Holders with unlimited ski and ride access to their North America Ski Resorts for the duration of the warranted 2019-20 Ski Season.

68.     Plaintiffs and the Class Members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain Class Members' Pass Holder fees while all of their North American Ski Resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

**COUNT III**
**Nationwide Class**
**Negligent Misrepresentation**

69.     Plaintiffs hereby repeat and reallege the allegations contained in paragraphs 1 through 56 above of this complaint, as if fully alleged herein.

70.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class arising from their purchases of Passes from Defendants.

71.     Defendants misrepresented that Pass Holders would have unlimited ski and ride access to their North America Ski Resorts for the represented 2019-20 Ski Season into the 2020 summer.

72.     Defendants made these representations without knowledge of their truth or veracity.

73.     Defendants negligently misrepresented and/or negligently omitted material facts about their Passes and services that their North American Ski Resorts would unconditionally be available for the entire duration of the 2019-20 Ski Season into the 2020 summer.

74.     The negligent misrepresentations and omissions made by Defendants, upon which Plaintiffs and Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class Members to purchase Defendants' Passes.

75.     As a result of Defendants' misrepresentations, Plaintiffs and all Class Members made full payment to Defendants for the Passes before the 2019-20 Ski Season began.

76.     Plaintiffs and the Class Members were injured as a direct and proximate result of Defendants' misrepresentations because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain Class Members' Pass Holder fees while all of their North American Ski Resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants'

15

representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

77.     The negligent actions of Defendants caused damage to Plaintiffs and Class Members, who are entitled to damages and other legal and equitable relief as a result.

**COUNT IV**
**Nationwide Class**
**Unjust Enrichment**

78.     Plaintiffs hereby repeat and reallege the allegations contained in paragraphs 1 through 56 above of this complaint, as if fully alleged herein.

79.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class arising from their purchases of Passes from Defendants.

80.     Plaintiffs and Class Members conferred benefits on Defendants by paying in advance of the start of the 2019-20 Ski Season and in full for the Passes they purchased from Defendants.

81.     Defendants have knowledge of such benefits and accepted those in full payments knowing the representations they made and services they were to provide in consideration for those payments, namely, unlimited skiing and riding at Defendants' North American Ski Resorts for the entirety of the represented 2019-20 Ski Season. Defendants developed the Pass program with the specific purpose to obtain nearly 100% of their ski or ride revenues before the 2019-20 Ski Season began.

82.     As a result of the Alterra Closure, Defendants received 100% of the revenues for their Passes sold to Plaintiffs and Class Members, but Defendants cancelled over one-third of the 2019-20 Ski Season depriving Plaintiffs and Class Members of benefits for which they paid Defendants in full.

83.     Defendants eliminated the vast majority of their employees and cut other operating costs that they otherwise would have incurred had Defendants kept their North American Ski Resorts open for the full duration of the 2019-20 Ski Season, as they represented. Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs and Class Members' Pass fees, while eliminating the costs for the services purchased by Plaintiffs and Class Members with those Pass fees. Retention of those moneys under these circumstances is unfair, unjust and inequitable because Defendants are retaining their customers' full Pass fees while all of their North American Ski Resorts remain closed.

84.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class Members is unfair, unjust, and inequitable, Defendants must pay restitution to Plaintiffs and Class Members for their unjust enrichment, as ordered by the Court.

**COUNT V**
**Nationwide Class**
**Conversion**

85.     Plaintiffs hereby repeat and reallege the allegations contained in paragraphs 1 through 56 above of this complaint, as if fully alleged herein.

86.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class arising from their purchases of Passes from Defendants.

87.     Plaintiffs and members of the Class had a right to a refund of their Pass fees once all of Defendants' North American Ski Resorts were and remain closed. Defendants intentionally retained the full amount of the Plaintiffs' and Class Members' Pass fees while Defendants' North American Ski Resorts were closed. Plaintiffs and Class Members did not consent to Defendants' retaining such fees while Defendants' North American Ski Resorts are closed.

88.    Plaintiffs and Class Members were harmed through Defendants' retention and conversion of their Pass fees for Defendants' own benefit; and Defendants' conduct was a substantial factor in causing Plaintiffs and Class Members' harm

**COUNT VI**
**Nationwide Class**
**Violation of Colorado Consumer Protection Act,**
**Colo. Rev. Stat. §§ 6-1-101, *et seq*.**

89.    Plaintiffs hereby repeat and reallege the allegations contained in paragraphs 1 through 56 above of this complaint, as if fully alleged herein.

90.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class or, alternatively, a Colorado Subclass arising from their purchases in Colorado of Passes from Defendants.

91.    Defendants are each a "person" as defined by Colo. Rev. Stat. § 6-1-102(6).

92.    Plaintiffs and Class Members, as well as the general public, are actual  or potential consumers of the products and services offered by Defendants or successors in interest to  actual consumers.

93.    Defendants engaged in deceptive trade practices in the course of their business, in violation of Colo. Rev. Stat. § 6-1-105(1), including, but not limited to, by advertising nationwide that purchasers of their Passes have unlimited, unrestricted skiing and snowboarding at Defendants' North American Ski Resorts for the entire duration of the represented 2019-20 Ski Season through, at some resorts, August 2020.

94.    By engaging in deceptive trade practices in the course of their business and vocation,  directly or indirectly affecting the people of Colorado and all other states where Passes were sold,  Defendants violated Colo. Rev. Stat. § 6-1-105(g)  by representing that goods

and services are of a particular standard or quality when they knew or should have known that they are of another.

95.     In particular, Defendants represented that the purchasers of the Passes would obtain "unlimited access" at their North American Ski Resorts for duration of the entire 2019-20 Ski Season through, at some resorts, August 2020, when in fact Defendants knew or should known that in the event that they closed all of their North American Ski Resorts before the end of the 2019-20 Ski Season they would retain 100% of the price paid to Defendants for the Passes.

96.     Defendants' representations and omissions were material because they were likely to  deceive reasonable consumers if Defendants failed to keep their North American Ski Resorts open for the duration of the 2019-20 Ski Season as represented and promised.

97.     Plaintiffs and the Class Members acted reasonably when they purchased Defendants' Passes based on their belief that Defendants' representations were true and lawful.

98.     Defendants' actions violate Colorado's Consumer Protection Act, and recklessly disregarded Plaintiffs' and Class Members' rights by accepting Plaintiffs' and Class Members' payments in full for the Passes, which were represented to allow Pass Holders the ability to ski and ride for the entire 2019-20 Ski Season, through, at some resorts, August 2020, but by prematurely closing their North American Ski Resorts and refusing to refund the fees paid by Plaintiffs and Class Members.

99.     As a direct and proximate result of Defendants' deceptive trade practices, Plaintiffs and the Class Members suffered injuries to their legally protected interests, including because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain 100% of Class Members' Pass Holder fees while all their North American Ski Resorts are closed; (b) they would not have

purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

100.    Defendants' deceptive trade practices significantly impact the public because Defendants own and operate at least 15 North American Ski Resorts, market the Passes as providing access to "38 global winter destinations," and, on information and belief, sell a large number of ski passes to consumers located in Colorado and every other state.

101.    Plaintiffs and the Class Members seek all monetary and non-monetary relief allowed by law, including the greater of their: (a) actual damages, or (b) $500, or (c) three times actual damages (for Defendants' bad faith conduct); injunctive relief; and reasonable attorneys' fees and  costs.

## COUNT VII
### Illinois Subclass
### Violation of the Illinois Uniform Deceptive Trade Practices Act
### 815 ILCS §§ 510/2, *et seq*.

102.    The Illinois Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Illinois Subclass, repeat and re-allege the allegations contained in paragraphs 1 through 56 above of this complaint, as if fully alleged herein.

103.    Plaintiff brings this claim individually and on behalf of the members of the proposed Illinois Subclass arising from their purchases in Illinois of Passes from Defendants.

104.    Plaintiff, Illinois Subclass Members, and Defendants are each a "person" as defined by ILCS § 510/1(5).

105.    Defendants engaged in deceptive trade practices in the course of their business, in violation of Illinois's Uniform Deceptive Trade Practices Act ("IDTPA"), 815 ILCS § 510/2, including, but not limited to, by advertising that purchasers of Defendants' Passes would have unlimited, unrestricted skiing at Defendants' North American Ski Resorts for the duration of the entire 2019-20 Ski Season through, at some resorts, August 2020.

106.    By engaging in deceptive trade practices in the course of their business and vocation, directly or indirectly affecting the people of Illinois, Defendants violated 815 ILCS § 510/2, including the following provisions: representing that their goods and services had characteristics, uses, and benefits that they did not have, in violation of 815 ILCS § 510/2(5); representing that goods and services are of a particular standard or quality when they are of another, in violation of 815 ILCS § 510/2(7); and engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of 815 ILCS § 510/2(12).

107.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

108.    Defendants recklessly disregarded the rights of Plaintiff and the Illinois Subclass Members.

109.    As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff and the Illinois Subclass Members suffered injuries to their legally protected interests, including because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain Plaintiff's and Class Members' Pass Holder fees while all North American Ski Resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c)

they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

110.   Plaintiff and the Illinois Subclass Members seek all monetary and non-monetary  relief allowed by law, including injunctive relief and attorneys' fees and costs.

**COUNT VIII**
**California Subclass**
**Violation of California's Unfair Competition Law,**
**California Business & Professions Code §§ 17200,** *et seq.*

111.   The California Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, repeats and realleges the allegations contained in paragraphs 1 through 56 above of this complaint, as if fully alleged herein

112.   Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass arising from their purchases in California of Passes from Defendants.

113.   Defendants are subject to California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising…."

114.   Defendants advertised and represented that their Pass Holders would have "unlimited access" at their North American Ski Resorts for the duration of the entire 2019-20 Ski Season into the 2020 summer. That representation was false and misleading to a reasonable consumer, including Plaintiff and the California Subclass Members, because Defendants in fact

closed all of their North American Ski Resorts after only two-thirds of the 2019-20 Ski Season while retaining 100% of the price paid to Defendants by Class Members for the Passes.

115.    Defendants' business practices, described herein, violated the "unfair" prong of the UCL in that their conduct of refusing to issue refunds to Plaintiffs and Class Members is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendants' advertising of their Passes as being available for use at any time during the entire 2019-20 Ski Season into the 2020 summer and their retention of Pass fees while their North American Ski Resorts are closed is of no benefit to consumers, but rather, is a substantial detriment.

116.    Plaintiff and the California Subclass Members acted reasonably when they purchased Passes from Defendants based on the belief that they would have unlimited access to Defendants' North American Ski Resorts for the entire 2019-20 Ski Season into the 2020 summer.

117.    Plaintiff and the California Subclass Members lost money or property as a result of Defendants' UCL violations because Plaintiff and the California Subclass Members suffered injuries caused by Defendants because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain 100% of Class Members' Pass Holder fees while all their North American Ski Resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

**COUNT IX**
**California Subclass**
**Violation of California's Consumers Legal Remedies Act,**
**California Civil Code §§ 1750, *et seq*.**
**(Injunctive Relief Only)**

118.    The California Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, repeats and realleges the allegations contained in paragraphs 1 through 56 above of this complaint, as if fully alleged herein.

119.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass arising from their purchases in California of Passes from Defendants.

120.    Plaintiff and California Subclass Members are residents of California and consumers who paid fees for use of Defendants' North American Ski Resorts for personal, family or household purposes. Plaintiff and the California Subclass Members are "consumers" as that term is defined by California's Consumers Legal Remedies Act ("CLRA") in Cal. Civ. Code § 1761(d).

121.    Access to Defendants' North American Ski Resorts that Plaintiff and the California Subclass Members purchased from Defendants was a "good" or "service" within the meaning of Cal. Civ. Code §§ 1761(a) and (b).

122.    Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods or services to consumers.

123.    Defendants' advertising and marketing that consumers would have "unlimited access" at their North American Ski Resorts into the 2020 summer and that their customers

24

would have access to their North American Ski Resorts upon paying a fee is false and misleading to a reasonable consumer, including Plaintiff, because Defendants in fact closed all of their North American Ski Resorts effective March 15, 2020, about one-third short of the promised duration of the 2019-20 Ski Season, while continuing to retain the full price Class Members' paid for Defendants' Passes

124.    California's CLRA, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(5) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair acts or practices, in that Defendants misrepresented the particular characteristics, benefits and quantities of the services.

125.    Under the CLRA, Cal. Civ. Code § 1770(a)(7) prohibits representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(7) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants' actions in March 2020 in shuttering all of their North American Ski Resorts were contrary to the services advertised.

126.    Plaintiff and the California Subclass Members acted reasonably when they purchased Defendants' Passes on the belief that Defendants' representations were true and lawful.

127.    Plaintiff and the California Subclass Members suffered injuries caused by Defendants because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain 100% of Class Members' Pass Holder fees while all their North American Ski Resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

128.    Under the CLRA, Civil Code § 1780(a), Plaintiff and Members of the California Subclass seek injunctive and equitable relief for Defendants' violations of the CLRA. Plaintiff has mailed an appropriate demand letter consistent with California Civil Code § 1782(a). If Defendants fail to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend this complaint to include a request for damages as permitted by Civil Code § 1782(d).

129.    Wherefore, Plaintiff seeks injunctive and equitable relief for Defendants' violations of the CLRA.

## COUNT X
## Minnesota Subclass
## Violation of Minnesota Consumer Fraud Act,
## Minn. Stat. §§ 325F.68, *et seq.* and Minn. Stat. §§ 8.31, *et seq.*

130.    The Minnesota Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Minnesota Subclass, repeats and realleges the allegations contained in paragraphs 1 through 56 above of this complaint, as if fully alleged herein.

131.     Plaintiff brings this claim individually and on behalf of the members of the proposed Minnesota Subclass arising from their purchases in Minnesota of Passes from Defendants.

132.     Defendants, Plaintiff, and the Minnesota Subclass Members are each a "person" as defined by Minn. Stat. § 325F.68(3).

133.     Defendants' services available to purchasers of their Passes are "merchandise" as defined by Minn. Stat. § 325F.68(2).

134.     Defendants engaged in "sales" as defined by Minn. Stat. § 325F.68(4).

135.     Defendants engaged in false promises, misrepresentations, misleading statements, or deceptive practices in connection with the sale of merchandise, in violation of Minn. Stat. § 325F.69(1), as described herein.

136.     Defendants' misrepresentations and omissions described herein were material because they were likely to deceive reasonable consumers.

137.     Defendants intended to induce Plaintiff and the Minnesota Subclass Members to rely on their misrepresentations and omissions by representing, promoting, and advertising that purchasers of Defendants' Passes would have unlimited, unrestricted skiing at Defendants' North American Ski Resorts for the duration of the entire 2019-20 Ski Season through, at some resorts, August 2020.

138.     Defendants' misleading, or deceptive practices affected the public interest, including Minnesotans who purchased Passes from Defendants.

139.     As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and the Minnesota Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages because: (a)

they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain 100% of Class Members' Pass Holder fees while all their North American Ski Resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

140.    Plaintiff and the Minnesota Subclass Members seek all monetary and non-monetary relief allowed by law, including damages, injunctive or other equitable relief, and attorneys' fees, disbursements, and costs.

**COUNT XI**
**Minnesota Subclass**
**Violation of Minnesota Uniform Deceptive Trade Practices Act,**
**Minn. Stat. §§ 325D.43, *et seq.***

141.    The Minnesota Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Minnesota Subclass, repeats and realleges the allegations contained in paragraphs 1 through 56 above of this complaint, as if fully alleged herein.

142.    Plaintiff brings this claim individually and on behalf of the members of the proposed Minnesota Subclass arising from their purchases in Minnesota of Passes from Defendants.

143.    Defendants engaged in deceptive trade practices in the course of their business, in violation of Minnesota's Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, including, but not limited to, by advertising that purchasers of Defendants' Passes would have unlimited, unrestricted skiing at Defendants' North American Ski Resorts for the duration of the entire 2019-20 Ski Season through, at some resorts, August 2020

28

144.    By engaging in deceptive trade practices in the course of their business and vocation, directly or indirectly affecting the people of Minnesota, Defendants violated Minn. Stat. § 325D.44, including the following provisions: representing that their goods and services had characteristics, uses, and benefits that they did not have, in violation of Minn. Stat. § 325D.44(1)(5); representing that goods and services are of a particular standard or quality when they are of another, in violation of Minn. Stat. § 325D.44(1)(7); and engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of Minn. Stat. § 325D.44(1)(13).

145.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

146.    Defendants intended to induce Plaintiff and the Minnesota Subclass Members to rely on their misrepresentations and omissions.

147.    Defendants recklessly disregarded the rights of Plaintiff and the Minnesota Subclass Members.

148.    As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff and the Minnesota Subclass Members suffered injuries to their legally protected interests, including because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain 100% of Class Members' Pass Holder fees while all their North American Ski Resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

29

149.     Plaintiff and the Minnesota Subclass Members seek all monetary and non-monetary  relief allowed by law, including injunctive relief and attorneys' fees and costs.

**COUNT XII**
**Missouri Subclass**
**Violation of Missouri Merchandise Practices Act**
**Mo. Rev. Stat. § 407.010 *et seq*.**

150.     The Missouri Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Missouri Subclass, repeats and realleges the allegations contained in paragraphs 1 through 56 above of this complaint, as if fully alleged herein.

151.     Plaintiff brings this claim individually and on behalf of the members of the proposed Missouri Subclass arising from their purchases in Missouri of Passes from Defendants.

152.     Plaintiff, Missouri Subclass Members, and Defendants are each a "person" as defined by Mo. Rev. Stat. § 407.010(5).

153.     Defendants advertised, offered, or sold goods or services in Missouri and engaged in trade or commerce directly or indirectly affecting the people of Missouri, as defined by Mo. Rev. Stat. § 407.010(4), (6) and (7).

154.     Plaintiff and Missouri Subclass Members purchased goods or services from Defendants primarily for personal, family, or household purposes.

155.     Defendants engaged in unlawful, unfair, and deceptive acts and practices, in connection with the sale or advertisement of merchandise in trade or commerce, in violation of Mo. Rev. Stat. § 407.020(1), as described herein.

156.     Defendants' unlawful, unfair, and deceptive acts and practices include accepting Plaintiffs' and Class Members' payments in full for the Passes, which were represented to allow Pass Holders the ability to ski and ride for the entire 2019-20 Ski Season, through, at some

resorts, August 2020, but by prematurely closing their North American Ski Resorts and refusing to refund the fees paid by Plaintiffs and Class Members.

157.   Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

158.   Plaintiff and the Missouri Subclass Members suffered injuries caused by Defendants because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain 100% of Class Members' Pass Holder fees while all their North American Ski Resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

159.   Plaintiff and Missouri Subclass Members seek all monetary and non-monetary relief allowed by law, including actual damages, punitive damages, attorneys' fees and costs, injunctive relief, and any other appropriate relief.

## COUNT XIII
### Montana Subclass
### Violation of Montana Unfair Trade Practices and Consumer Protection Act
### M.C.A. §§ 30-14-101, *et seq.*

160.   The Montana Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Montana Subclass, repeats and realleges the allegations contained in paragraphs 1 through 56 above of this complaint, as if fully alleged herein.

161.   Plaintiff brings this claim individually and on behalf of the members of the proposed Montana Subclass arising from their purchases in Montana of Passes from Defendants.

162.   Defendants are each a "person" as defined by MCA § 30-14-102(6).

163.    Plaintiff and Montana Subclass Members are "consumers" as defined by M.C.A. § 30-14-102(1).

164.    Defendants advertised, offered, or sold goods or services in Montana and engaged in trade or commerce directly or indirectly affecting the people of Montana, as defined by M.C.A. § 30- 14-102(8).

165.    Defendants engaged in unfair and deceptive acts and practices in the conduct of trade or commerce, in violation M.C.A. § 30-14-103, as described herein.

166.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

167.    Plaintiffs and the Montana Subclass Members acted reasonably when they purchased Defendants' Passes based on their belief that Defendants' representations were true and lawful.

168.    Defendants' actions violate the Montana Consumer Protection Act, and recklessly disregarded Plaintiffs' and Class Members' rights by accepting Plaintiffs' and Class Members' payments in full for the Passes, which were represented to allow Pass Holders the ability to ski and ride for the entire 2019-20 Ski Season, through, at some resorts, August 2020, but by prematurely closing their North American Ski Resorts and refusing to refund the fees paid by Plaintiffs and Class Members.

169.    Defendants' acts described above are unfair and offend public policy, and they are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

170.    Plaintiff and the Montana Subclass Members suffered injuries caused by Defendants because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain 100% of Class

Members' Pass Holder fees while all their North American Ski Resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

171.     Plaintiff and Montana Subclass Members seek all monetary and non-monetary relief allowed by law, including the greater of (a) actual damages or (b) statutory damages of $500, treble damages, restitution, attorneys' fees and costs, injunctive relief, and other relief that the Court deems appropriate.

**COUNT XIV**
**Nebraska Subclass**
**Violation of Nebraska Consumer Protection Act**
**Neb. Rev. Stat. §§ 59-1601, *et seq.***

172.     The Nebraska Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Nebraska Subclass, repeats and realleges the allegations contained in paragraphs 1 through 56 above of this complaint, as if fully alleged herein.

173.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nebraska Subclass arising from their purchases in Nebraska of Passes from Defendants.

174.     Plaintiff, Nebraska Subclass Members, and Defendants are each a "person" as defined by Neb. Rev. Stat. § 59-1601(1).

175.     Defendants advertised, offered, or sold goods or services and engaged in "trade" and "commerce" directly or indirectly affecting the people of Nebraska, as defined by Neb. Rev. Stat. § 59-1601(2).

176.    The Passes are "assets" as defined by Neb. Rev. Stat. § 59-1601(3).

177.    Defendants engaged in unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of Neb. Rev. Stat. § 59-1602 as described herein.

178.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

179.    Plaintiffs and the Nebraska Subclass Members acted reasonably when they purchased Defendants' Passes based on their belief that Defendants' representations were true and lawful.

180.    Defendants' actions violate Nebraska's Consumer Protection Act, and recklessly disregarded Plaintiffs' and Class Members' rights by accepting Plaintiffs' and Class Members' payments in full for the Passes, which were represented to allow Pass Holders the ability to ski and ride for the entire 2019-20 Ski Season, through, at some resorts, August 2020, but by prematurely closing their North American Ski Resorts and refusing to refund the fees paid by Plaintiffs and Class Members.

181.    Defendants' acts described above are unfair and offend public policy, and they are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

182.    Plaintiff and the Nebraska Subclass Members suffered injuries caused by Defendants because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain 100% of Class Members' Pass Holder fees while all their North American Ski Resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations

and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

183.    Plaintiff and Nebraska Subclass Members seek all monetary and non-monetary relief allowed by law, including injunctive relief, the greater of either (1) actual damages or (2) $2,000 each, civil penalties, and reasonable attorneys' fees and costs.

**COUNT XV**
**Nebraska Subclass**
**Violation of Nebraska Uniform Deceptive Trade Practices Act**
**Neb. Rev. Stat. §§ 87-301, *et seq.***

184.    The Nebraska Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Nebraska Subclass, repeats and re-alleges the allegations contained in paragraphs 1 through 56 above of this complaint, as if fully alleged herein.

185.    Plaintiff brings this claim individually and on behalf of the members of the proposed Nebraska Subclass arising from their purchases in Nebraska of Passes from Defendants.

186.    Plaintiff, Nebraska Subclass Members, and Defendants are each a "person" as defined by Neb. Rev. Stat. § 87-301(19).

187.    Defendants engaged in deceptive trade practices in the course of their business, in violation of Nebraska's Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302, including, but not limited to, by advertising that purchasers of Defendants' Passes would have unlimited, unrestricted skiing at Defendants' North American Ski Resorts for the duration of the entire 2019-20 Ski Season through, at some resorts, August 2020.

188.    By engaging in deceptive trade practices in the course of their business and vocation, directly or indirectly affecting the people of Nebraska, Defendants violated Neb. Rev. Stat. § 87-302, including the following provisions: representing that their goods and

services had characteristics, uses, and benefits that they did not have, in violation of Neb. Rev. Stat. § 87-302(a)(5); and representing that goods and services are of a particular standard or quality when they are of another, in violation of Neb. Rev. Stat. § 87-302(a)(8).

189.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

190.     Defendants recklessly disregarded the rights of Plaintiff and the Nebraska Subclass Members.

191.     As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff and the Nebraska Subclass Members suffered injuries to their legally protected interests, including because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain Plaintiff's and Class Members' Pass Holder fees while all North American Ski Resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

192.     Plaintiff and the Nebraska Subclass Members seek all monetary and non-monetary relief allowed by law, including injunctive relief and attorneys' fees and costs.

**COUNT XVI**
**Ohio Subclass**
**Violation of the Ohio Consumer Sales Practices Act,**
**Ohio Rev. Code §§ 1345.01, *et seq*.**

193.     The Ohio Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Ohio Subclass, repeats and re-alleges the allegations contained in paragraphs 1 through 56 above of this complaint, as if fully alleged herein.

36

194.    Plaintiff brings this claim individually and on behalf of the members of the proposed Ohio Subclass arising from their purchases in Ohio of Passes from Defendants.

195.    Plaintiff and Ohio Subclass Members are "persons," as defined by Ohio Rev. Code § 1345.01(B).

196.    Defendants are "suppliers" engaged in "consumer transactions," as defined by Ohio Rev. Code §§ 1345.01(A) & (C).

197.    Defendants advertised, offered, or sold goods or services in Ohio and engaged in trade or commerce directly or indirectly affecting the people of Ohio.

198.    Defendants engaged in unfair and deceptive acts and practices in connection with a consumer transaction, in violation of Ohio Rev. Code §§ 1345.02(A), including: representing that their goods, services, and intangibles had performance characteristics, uses, and benefits that it did not have, in violation of Ohio Rev. Code § 1345.02(B)(1); and representing that their goods, services, and intangibles were of a particular standard or quality when they were not, in violation of Ohio Rev. Code § 1345.02(B)(2).

199.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

200.    Defendants recklessly disregarded the rights of Plaintiff and the Ohio Subclass Members.

201.    Defendants' unfair and deceptive acts and practices complained of herein affected the public interest, including the numerous Ohioans who purchased the Passes.

202.    As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff and the Ohio Members suffered injuries to their legally protected interests, including because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants'

representations and omission of a warning that they would retain Plaintiff's and Class Members' Pass Holder fees while all North American Ski Resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

203.    Plaintiff and the Ohio Subclass Members seek all monetary and non-monetary relief allowed by law, including declaratory and injunctive relief, the greater of actual and treble damages or statutory damages, attorneys' fees and costs, and any other appropriate relief.

**COUNT XVII**
**Ohio Subclass**
**Violation of the Ohio Deceptive Trade Practices Act,**
**Ohio Rev. Code §§ 4165.01, *et seq*.**

204.    The Ohio Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Ohio Subclass, repeats and re-alleges the allegations contained in paragraphs 1 through 56 above of this complaint, as if fully alleged herein.

205.    Plaintiff brings this claim individually and on behalf of the members of the proposed Ohio Subclass arising from their purchases in Ohio of Passes from Defendants.

206.    Plaintiff, Ohio Subclass Members, and Defendants are each a "person" as defined by Ohio Rev. Code § 4165.01(D).

207.    Defendants engaged in deceptive trade practices in the course of their business, in violation of Ohio's Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02, including, but not limited to, by accepting Plaintiffs' and Class Members' payments in full for the Passes, which were represented to allow Pass Holders the ability to ski and ride for the entire 2019-20

Ski Season, through, at some resorts, August 2020, but by prematurely closing their North American Ski Resorts and refusing to refund the fees paid by Plaintiffs and Class Members.

208.   By engaging in deceptive trade practices in the course of their business and vocation, directly or indirectly affecting the people of Ohio, Defendants violated Ohio Rev. Code § 4165.02, including the following provisions: representing that their goods and services had characteristics, uses, and benefits that they did not have, in violation of Ohio Rev. Code § 4165.02(A)(7); and representing that goods and services are of a particular standard or quality when they are of another, in violation of Ohio Rev. Code § 4165.02(A)(9).

209.   Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

210.   Defendants recklessly disregarded the rights of Plaintiff and the Ohio Subclass Members.

211.   As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff and the Ohio Subclass Members suffered injuries to their legally protected interests, including because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain Plaintiff's and Class Members' Pass Holder fees while all North American Ski Resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

212.    Plaintiff and the Ohio Subclass Members seek all monetary and non-monetary relief allowed by law, including injunctive relief, actual damages, attorneys' fees, and any other relief that is just and proper.

## COUNT XVIII
### Wisconsin Subclass
### Violation of the Wisconsin Deceptive Trade Practices Act,
### Wis. Stat. §§ 100.18, *et seq*.

213.    The Wisconsin Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Wisconsin Subclass, repeats and re-alleges the allegations contained in paragraphs 1 through 56 above of this complaint, as if fully alleged herein.

214.    Plaintiff brings this claim individually and on behalf of the members of the proposed Wisconsin Subclass arising from their purchases in Wisconsin of Passes from Defendants.

215.    Plaintiff and Wisconsin Subclass Members are members of "the public," as that term is used in Wis. Stat. § 100.18(1).

216.    Defendants are each a "person, firm, corporation or association," as those terms are used in Wis. Stat. § 100.18(1).

217.    With intent to sell, distribute, or increase consumption of merchandise, services, or anything else offered by Defendants to members of the public for sale, use, or distribution, Defendants made, published, circulated, placed before the public or caused (directly or indirectly) to be made, published, circulated, or placed before the public in Wisconsin advertisements, announcements, statements, and representations to the public which contained assertions, representations, or statements of fact which are untrue, deceptive, and/or misleading, in violation of Wis. Stat. § 100.18(1).

218.    Defendants' untrue, deceptive, and/or misleading communications included, but are not limited to, representing that they would allow Pass Holders to ski and ride for the entire 2019-20 Ski Season, through, at some resorts, August 2020, but by prematurely closing their North American Ski Resorts and refusing to refund the fees paid by Plaintiffs and Class Members.

219.    Defendants' representations and omissions were material because they were likely to  deceive reasonable consumers.

220.    Defendants intended to induce Plaintiff and the Wisconsin Subclass Members to rely on their misrepresentations and omissions and they did rely by purchasing the Passes.

221.    As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff and the Wisconsin Subclass Members suffered injuries to their legally protected interests, including because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain Plaintiff's and Class Members' Pass Holder fees while all North American Ski Resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

222.    Plaintiffs and the Wisconsin Subclass Members seek all monetary and non-monetary  relief allowed by law, including injunctive relief and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

a)      For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class Members;

b)      For an order certifying the Subclasses under Rule 23 of the Federal Rules of Civil Procedure, naming the Illinois Plaintiffs as representative of the Illinois Subclass, naming the California Plaintiffs as representative of the California Subclass, naming the Minnesota Plaintiffs as representative of the Minnesota Subclass, naming the Missouri Plaintiff as representative of the Missouri Subclass, naming the Montana Plaintiff as representative of the Montana Subclass, naming the Nebraska Plaintiff as representative of the Nebraska Subclass, naming the Ohio Plaintiffs as representative of the Ohio Subclass, naming the Wisconsin Plaintiffs as representative of the Wisconsin Subclass, and Plaintiffs' attorneys as Class Counsel to represent the Subclass Members.

c)      For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

d)      For an order finding in favor of Plaintiffs, the Class, and the Subclasses, on all counts asserted herein;

e)      For compensatory damages in an amount to be determined by the Court and/or jury;

f)      For prejudgment and post-judgment interest on all amounts awarded;

g)      For an order of restitution and all other forms of equitable monetary relief;

h)      For injunctive relief as pleaded or as the Court may deem proper; and

i)      For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and

expenses and costs of suit.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action and issues so triable.


HELLMUTH & JOHNSON, PLLC


Dated:      July 13, 2020          By:   s/Richard M. Hagstrom
                                         Richard M. Hagstrom (MN #39445)
                                         Michael R. Cashman (MN #206945)
                                         Gregory S. Otsuka (MN #397873)
                                         *Not admitted in District of Colorado*
                                         Daniel K. Asiedu (MN #399151)
                                         *Not admitted in District of Colorado*
                                         Faline M. Williams (MN #400292)
                                         (*Not admitted in District of Colorado*)
                                         8050 West 78th Street
                                         Edina, Minnesota 55439
                                         Telephone: (952) 941-4005
                                         Facsimile: (952) 941-2337
                                         Email: rhagstrom@hjlawfirm.com
                                                mcashman@hjlawfirm.com
                                                gotsuka@hjlawfirm.com
                                                dasiedu@hjlawfirm.com
                                                fwilliams@hjlawfirm.com