**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 20-cv-01057-RM-SKC
      Consolidated for Pretrial:
      20-cv-01158-RM-SKC
      20-cv-01175-RM-SKC
      20-cv-01186-RM-SKC
      20-cv-01254-RM-SKC
      20-cv-01347-RM-SKC
      20-cv-01520-RM-SKC
      20-cv-01583-RM-SKC
      20-cv-01691-RM-SKC
      20-cv-01699-RM-SKC
      20-cv-02021-RM-SKC

TIMOTHY GOODRICH,
NOLTE MEHNERT,
GEORGE T. FARMER
JOSEPH PANGANIBAN,
ERIK ERNSTROM,
W. WALTER LAYMAN,
BRADLEY BRIAR, and
KERI REID, each individually and on behalf of all others similarly situated,

      Plaintiffs,

        v.

ALTERRA MOUNTAIN COMPANY,
ALTERRA MOUNTAIN COMPANY U.S. INC., and
IKON PASS INC.,

      Defendants.

---

**CONSOLIDATED CLASS ACTION COMPLAINT**

---

"People didn't get what they paid for."
- Rusty Gregory, CEO of Alterra Mountain Company

## Introduction

1.      Ikon season ski passes are sold by Defendants Alterra Mountain Company, subsidiary Alterra Mountain Company U.S. Inc., and subsidiary Ikon Pass Inc.  Ikon passes entitle purchasers to: "unlimited access" at listed ski resorts in Colorado (e.g., Winter Park), California (e.g., Mammoth Mountain), and throughout the United States and Canada; a set number of days of skiing at additional resorts; and other associated benefits.  These promised benefits last throughout the entire ski season.

2.      Plaintiffs and hundreds of thousands of other skiers purchased Ikon passes for the 2019-2020 season.  In mid-March, with months left in the ski season, ski resorts covered by the Ikon pass closed early.  As Alterra Mountain Company CEO Rusty Gregory admitted, passholders "didn't get what they paid for."

3.      Despite not providing the promised skiing access, Defendants did not offer a refund (or even partial refund) on passes.  Instead, Defendants kept all of skiers' money.  With hundreds of thousands of pass holders, this amounts to tens of millions (or more) in unjust enrichment.

4.      Plaintiffs bring this case on behalf of themselves and the hundreds of thousands of skiers who purchased Ikon ski passes for the 2019-2020 ski season, but did not get the full benefits they paid for.  Plaintiffs seek fair and reasonable compensation for Ikon pass holders.

## Parties

**Proposed Class Representatives**

5.      Timothy Goodrich is a citizen of California (domiciled in Torrance, California). He purchased an Ikon Base Pass through the Ikon website in March 2019.  As a veteran, he received a military discount of $160.  After applying this discount to the $649 price, he paid

$489.  When purchasing a pass, he expected the promised benefits of unlimited access (subject to a few blackout dates) throughout the ski season.  When resorts closed and pass benefits ended early, he did not receive what he paid for.  Had he known that Alterra would fail to provide full pass benefits and yet retain all pass fees, he would not have purchased a pass on the terms offered.

6.      Keri Reid is a citizen of Wisconsin (domiciled in Minocqua, Wisconsin).  In October 2019, Ms. Reid purchased two full Ikon passes from the Ikon website, for herself and Callan Kofoid.  She paid $1,049 for each pass.  When purchasing passes, she expected the promised benefits of unlimited access throughout the ski season.  When resorts closed and pass benefits ended early, she did not receive what she paid for.  Had she known that Alterra would fail to provide full pass benefits and yet retain all pass fees, she would not have purchased a pass on the terms offered.

7.      Nolte Mehnert is a citizen of Colorado (domiciled in Denver, Colorado at the time of his pass purchase and the filing of this lawsuit).[1] He purchased an Ikon Base Pass (Young Adult) through the Ikon website in November 2019.  He paid $639 (the Young Adult price for passes purchased at the time).  When purchasing a pass, he expected the promised benefits of unlimited access (subject to a few blackout dates) throughout the ski season.  When resorts closed and pass benefits ended early, he did not receive what he paid for.  Had he known that Alterra would fail to provide full pass benefits and yet retain all pass fees, he would not have purchased a pass on the terms offered.

8.      George T. Farmer is a citizen of California (domiciled in San Diego, California).  He purchased an Ikon Base Pass through the Ikon website in October 2019.  As a student, he

---

[1] Mr. Mehnert is now domiciled in Spokane, Washington.

received a college discount of $210.  After applying the discount, he paid $539. When purchasing a pass, he expected the promised benefits of unlimited access (subject to a few blackout dates) throughout the ski season.  When resorts closed and pass benefits ended early, he did not receive what he paid for.  Had he known that Alterra would fail to provide full pass benefits and yet retain all pass fees, he would not have purchased a pass on the terms offered.

9.      Erik Ernstrom is a citizen of Colorado (domiciled in Longmont, Colorado).  He purchased an Ikon Base Pass through the Ikon website in October of 2019.  He paid $749.  When purchasing a pass, he expected the promised benefits of unlimited access (subject to a few blackout dates) throughout the ski season.  When resorts closed and pass benefits ended early, he did not receive what he paid for.  Had he known that Alterra would fail to provide full pass benefits and yet retain all pass fees, he would not have purchased a pass on the terms offered.

10.     W. Walter Layman is a citizen of Utah (domiciled in Park City, Utah).  He purchased an Ikon Base Pass in April 2019 through the Ikon website. He paid $649.  When purchasing a pass, he expected the promised benefits of unlimited access (subject to a few blackout dates) throughout the ski season.  When resorts closed and pass benefits ended early, he did not receive what he paid for.  Had he known that Alterra would fail to provide full pass benefits and yet retain all pass fees, he would not have purchased a pass on the terms offered.

11.     Joseph Panganiban is a citizen of California (domiciled in Orange County, California).   Mr. Panganiban purchased Ikon Base Passes through the Ikon website for himself, his wife, and two children in March of 2019. He paid $2,216 ($619 per adult pass and $489 per young adult pass). When purchasing a pass, he expected the promised benefits of unlimited access (subject to a few blackout dates) throughout the ski season.  When resorts closed and pass benefits ended early, he did not receive what he paid for.  Had he known that Alterra would fail

to provide full pass benefits and yet retain all pass fees, he would not have purchased passes on the terms offered.

12.     Bradley Briar is a citizen of Illinois (domiciled in Tinley Park, Illinois). He purchased two Ikon Base Passes in April 2019, for himself and Heather Seger. He paid $649 for each pass. When purchasing a pass, he expected the promised benefits of unlimited access (subject to a few blackout dates) throughout the ski season.  When resorts closed and pass benefits ended early, he did not receive what he paid for.  Had he known that Alterra would fail to provide full pass benefits and yet retain all pass fees, he would not have purchased a pass on the terms offered.

**Defendants**

13.     Defendant Alterra Mountain Company is a Delaware corporation with its headquarters and principal place of business at 3501 Wazee St., Denver, Colorado 80216. Alterra Mountain Company owns and operates at least 15 ski resorts in Colorado, California, and around North America.  These resorts include: Big Bear Mountain, June Mountain, Mammoth Mountain, and Squaw Valley Alpine Meadows in California; Steamboat and Winter Park in Colorado; Deer Valley and Solitude in Utah; Stratton and Sugarbush Resort in Vermont; Crystal Mountain in Washington; and Snowshoe Mountain in West Virginia. Alterra also operates resorts in Canada, including Blue Mountain, Tremblant and CMH Heli-Skiing & Summer Adventures.

14.     Defendant Alterra Mountain Company U.S. Inc. is a Delaware corporation with its headquarters and principal place of business at 3501 Wazee St., Denver, Colorado 80216. Upon information and belief, Alterra Mountain Company U.S. Inc is a fully-owned subsidiary of Alterra Mountain Company.

15.     Defendant Ikon Pass, Inc. is a Delaware Corporation with its headquarters and principal place of business at 3501 Wazee St., Denver, Colorado 80216.  Ikon Pass, Inc. is a fully-owned subsidiary of Alterra Mountain Company.

### Jurisdiction and Venue

16.     This Court has jurisdiction under 28 U.S.C. § 1332(d)(2).  This matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which one or more members of the proposed class are citizens of a state different from any one of the Defendants.

17.     Venue is proper under 28 U.S.C. § 1391(b)(1) & (2), because Defendants reside in the District of Colorado.  In addition, a substantial part of the Defendants' conduct giving rise to the claims occurred in the District of Colorado.

### Facts

18.     For the 2019-2020 ski season, Defendants offered Ikon season passes for sale to the general public.  For example, Defendants offered the pass on the Ikon website: www.ikonpass.com.

19.     Defendants offered two primary versions of the Ikon pass: the "Ikon Pass" and the "Ikon Base Pass."

20.     The essential terms of each offer were prominently displayed on the www.ikonpass.com website, including the "shop passes" pages.  The "shop passes" pages for the 2019-2020 season are partially still available on the website.  For example, for the Ikon Pass:

6



https://www.ikonpass.com/en/shop-passes/ikon-pass-2019-2020



https://www.ikonpass.com/en/shop-passes/ikon-pass-2019-2020

21.     And for the Ikon Base Pass:



https://www.ikonpass.com/en/shop-passes/ikon-base-pass-2019-2020



https://www.ikonpass.com/en/shop-passes/ikon-base-pass-2019-2020

22.     Pricing terms for 2019-2020 season passes are no longer displayed on the website.

Below are further examples of the layout for next season (2020-2021), which includes pricing

terms.  Although the layout may have differed and the prices were different, the pricing was also

8

prominently displayed at all times when the 2019-2020 season pass was on sale and class

members purchased their passes.  (The 4-day pass was not offered for the 2019-2020 season).



https://www.ikonpass.com/en/shop-passes




https://www.ikonpass.com/en/shop-passes/ikon-pass-2020-2021



https://www.ikonpass.com/en/shop-passes/ikon-pass-2020-2021



https://www.ikonpass.com/en/shop-passes/ikon-pass-2020-2021

23.     For the 2019-2020 season, the full price of the Ikon Base Pass was $649. [2]  In

exchange for paying this amount, purchasers would receive "unlimited access" to "ski or ride as

many days as you want" at 12 resorts (subject to "limited blackout dates at select destinations,"

which included major ski holidays).  Most of these resorts are owned by Alterra.  In addition,

purchasers would receive "up to 5 days" at an additional 28 resorts with "limited blackout dates."

---

[2] Defendants offered certain discounts on the full price of season passes, for example a
veteran discount, young adult discount, and child price.  In addition, pass prices increased for
later purchasers (e.g., for passes purchased after October 2019).

24.     The full price of the Ikon Pass was initially $949. [3] In exchange, purchasers received "unlimited access" to 14 resorts (most owned by Alterra) and "up to 7 days" at 26 additional resorts, with "no blackout dates."

25.     In addition, Defendants offered "local" Ikon passes for specific resorts or groups of resorts.   Like other Ikon passes, purchasers received "unlimited access" at the specified resort or resorts.   The pricing of local passes was set for each relevant resort.

26.     For the 2019-2020 season, Alterra's website did not qualify its offer of "unlimited access" with any force majeure clause or any other similar clause.  Alterra only added a "force majeure" clause to its website Terms of Use in February of 2020, after all 2019-2020 passes had been purchased.

27.     In addition to the promises made on the Ikon Pass website, Alterra made similar "unlimited access" promises in press releases, emails, and other marketing materials and advertisements.

28.     When a customer purchased and paid for an Ikon pass (for example, through the Ikon website shopping cart), this constituted acceptance of the offer and formed a contract between that purchaser and Defendants.

29.     Each class member selected and paid for an Ikon pass.  This constituted acceptance of Defendants' offer and formed a contract between Defendants and each class member.

30.     Defendant Alterra Mountain Company ("Alterra") is a party to the contract with each class member.   Alterra made the offer described above that, when accepted by a class

---

[3] https://www.alterramtnco.com/news/2019/02/26/19-20-ikon-pass-launch-release (the pass price went up for later purchasers).

member, formed a contract between Alterra and that class member.  According to an Alterra press release, the Ikon pass is "[b]rought to you by Alterra Mountain Company." [4]

31.     In addition or in the alternative, subsidiary defendants Alterra Mountain Company U.S. Inc. and/or Ikon Pass, Inc. made the offer described above while acting as an agent of Alterra Mountain Company.  The Ikon pass website appears to be operated, at least in part, by Alterra subsidiary Ikon Pass, Inc.  For example, the website copyright states "Ikon Pass, Inc." When this offer was accepted by a class member, it formed a contract between Alterra Mountain Company and that class member (and, in addition or in the alternative, formed a contract between that class member and Ikon Pass, Inc. and/or Alterra Mountain Company U.S. Inc.).

32.     On March 14, 2020, Alterra announced that all of its North American resorts would be closed until further notice and immediately closed each of its resorts.  Around the same time, other resorts to which Ikon pass holders were promised access also closed.

33.     The resorts closed well before the end of the ski season.  For each resort, the season extends past March.  The Spring and Summer months (March, April, May and later), when the weather is warmer but snow conditions are still good, are popular and important parts of the ski season. Here is Winter Park in April, with snow but no skiers:



Winter Park, April 2020

---

[4] https://www.alterramtnco.com/news/2019/02/26/19-20-ikon-pass-launch-release

34.     Alterra itself recognized that the 2019-2020 ski season extended past the mid-March closure dates.  Before the beginning of the ski season, Alterra resorts (along with other Ikon pass resorts) post expected opening and closing dates.  For example, Winter Park (an Alterra-owned resort) announced a season ending May 3.   Each year, these dates are published in newspapers, magazines, and blogs.  Skiers also know the approximate length of the ski season from past seasons.

35.     Alterra has acknowledged that it failed to provide a complete season in 2019-2020 and that it failed to give passholders what they paid for.  In April of 2020, Alterra admitted the need to provide "value back to skiers and riders for the shortened 19/20 winter season."  And in May 2020, Alterra's CEO Rusty Gregory frankly acknowledged that "people didn't get what they paid for."

36.     Mr. Gregory also said: "Knowing the right thing to do [is] easy. The hard part [is] doing it."  But Alterra did not do the right thing.  After resorts closed, Alterra laid off 17,000 employees to reduce costs and preserve revenue.  Because Alterra was no longer providing skiing, it no longer had to incur the associated costs.  Alterra, however, kept 100% of the money Ikon passholders prepaid in exchange for a complete season of skiing.

37.     To induce consumers to buy Ikon passes, Defendants promised unlimited resort access (subject to a few blackout dates for Base passes) for a complete ski season.  A reasonable consumer would believe that Defendants would either provide the promised access, or if Defendants did not provide it, return a proportionate amount of pass fees.  Defendants' "unlimited access" representations misleadingly omitted or concealed that they would return no pass fees even if the promised access was not provided.

38.      In sum, Defendants did not provide pass holders with what they paid for: unlimited resort access for the ski season.  Defendants have not offered to return, and have not returned, any proportion of pass fees.

### Class Action Allegations

**The proposed class and subclass.**

39.      **Ikon Pass Class.**  Plaintiffs bring this action on behalf of the proposed class of: all individuals who purchased an Ikon Pass (including the Ikon Pass, Ikon Base Pass, and Ikon local season passes) for the 2019-2020 ski season (the "Ikon Pass Class").

40.      It is appropriate to include these Ikon Pass purchasers in the same class.  All groups formed a substantially similar contract with Defendants.  The core benefits of the purchased Ikon passes were substantially the same: unlimited access to Ikon resorts, with limited additional ski days at other destinations.  Both groups allege the same breach, and related claims. Both groups seek the same type of relief: compensation for the early termination of pass benefits. There are no conflicts of interest between these groups.

41.      **California Subclass.**  For the California Unfair Competition Law, Consumer Legal Remedies Act, and False Advertising Law claims, Plaintiffs Goodrich, Farmer, and Panganiban (the "California Plaintiffs") bring this action on behalf of the proposed class of: all individuals in the Ikon Pass Class who purchased Ikon passes in California (the "California Subclass").

42.      **Illinois Subclass.**  For the Illinois Consumer Fraud and Deceptive Business Practices Act, Plaintiff Bradley Briar brings this action on behalf of the proposed class of: all individuals in the Ikon Pass Class who purchased Ikon passes in Illinois (the "Illinois Subclass").

43.     **Wisconsin Subclass.**  For the Wisconsin Deceptive Trade Practices Act claim, Plaintiff Keri Reid brings this action on behalf of the proposed class of: all individuals in the Ikon Pass Class who purchased Ikon passes in Wisconsin (the "Wisconsin Subclass").

44.     The following people are excluded from the Class and Subclasses: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**Numerosity.**

45.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are hundreds of thousands of proposed class members.  Indeed, for the 2018-2019 season, Defendants projected that 250,000 Ikon passes would be sold.

**Commonality.**

46.     There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

   i.   The terms of the contract formed between Ikon passholders and Defendants;

   ii.  Whether Defendants breached this contract by failing to provide pass benefits for the duration of the ski season;

   iii. Damages needed to reasonably compensate pass holders;

    iv.  Whether Defendants were unjustly enriched by keeping all pass fees after providing resort access for only a portion of the ski season;

    v.  Whether Defendants converted pass holders' property by retaining pass fees after resort closures;

    vi.  Whether Defendants wrongfully retained money had and received from pass holders by retaining pass fees after resorts closures;

    vii.  For the state subclasses, whether Defendants' refusal to return pass fees and associated misleading statements and omissions violated the relevant consumer protection law claims.

**Typicality.**

47.    Plaintiffs' claims are typical of the proposed class.  Like the proposed class, Plaintiffs purchased an Ikon pass (Base Pass or full Ikon Pass) for the 2019-2020 season.  Like the proposed class, Plaintiffs lost access to Ikon resorts before the end of the ski season and seek reasonable compensation for this loss.   And as explained above, purchasers of the Base Pass, full Ikon Pass, and Ikon local pass formed a substantially similar contract with Defendants.  The core benefits of the passes were substantially the same: unlimited access to Ikon resorts, with limited additional ski days at other destinations.  Plaintiffs allege the same breach, and other claims, as the proposed class.  Plaintiffs seek the same type of relief: compensation for the early termination of pass benefits.

**Adequacy.**

48.    Plaintiffs will fairly and adequately protect the interests of the proposed class. Plaintiffs' interests are aligned with the interests of the proposed class members: plaintiffs seek reasonable compensation for Defendants' breach and other alleged wrongs.  Plaintiffs are

represented by experienced class counsel who are prepared to vigorously litigate this case through judgment and appeal.  There are no conflicts of interest between Plaintiffs and the class.

### Predominance and Superiority.

49.     The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class.  For example, individual adjudication would create a risk that breach of the same contract is found for some proposed class members, but not others.

50.     Common questions of law and fact predominate over any questions affecting only individual members of the proposed class.  These common legal and factual questions arise from certain central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member.  For example, a core liability question is common: whether Defendants breached their contract with Ikon pass holders by failing to offer unlimited access to Ikon resorts throughout the ski season.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

52.     The proposed class is readily ascertainable.  The precise number and identity of proposed class members can be determined with specificity from Defendants' sales records.

## Claims

**Claim 1**
**Breach of Contract**
**(Ikon Pass Class)**

53.     Plaintiffs allege this claim individually and on behalf of the proposed Ikon Pass

Class (collectively "Plaintiffs" as used in this claim).

54.     Plaintiffs incorporate the facts alleged above.

55.     A valid contract existed between Plaintiffs and Defendants.  The contract, as

alleged above, entitled Plaintiffs to unlimited access (subject to a few blackout dates for certain

passes) to Ikon resorts throughout the ski season.

56.     Plaintiffs paid their pass fees and performed all their contractual obligations.

57.     Defendants materially breached by failing to provide Plaintiffs with access to

Ikon resorts, for a substantial portion of the ski season.  This deprived Plaintiffs of the benefit of

the bargain.

58.     Defendants have not returned any pass fees to Plaintiffs.

59.     Defendants' breach was the proximate cause, and a substantial factor, in causing

losses and damage to Plaintiffs.

60.     Plaintiffs are entitled to damages under the contract.  In the alternative, Plaintiffs

are entitled to rescission and restitution.

**Claim 2**
**Breach of the implied covenant of good faith and fair dealing**
**(Ikon Pass Class)**

61.     Plaintiffs allege this claim individually and on behalf of the proposed Ikon Pass

Class (collectively "Plaintiffs" as used in this claim).

62.     Plaintiffs incorporate the facts alleged above.

63.     Defendants had an implied duty of good faith and fair dealing with respect to the contract with each class member.

64.     Plaintiffs incorporate the allegations of Claim 1, except allege in the alternative that to the extent that the contract gave Defendants any discretion in deciding whether to return pass fees, Defendants failed to exercise that discretion in good faith by retaining all fees after resorts closed.

65.     Defendants' breach was the proximate cause, and a substantial factor, in causing losses and damage to Plaintiffs.

66.     Plaintiffs are entitled to damages under the contract.  In the alternative, Plaintiffs are entitled to recission and restitution.

## Claim 3
## Unjust enrichment
## (Ikon Pass Class)

67.     Plaintiffs allege this claim individually and on behalf of the proposed Ikon Pass Class (collectively "Plaintiffs" as used in this claim).

68.     Plaintiffs incorporate the facts alleged above.

69.     By collecting pass fees, Defendants received (and knowingly and willingly accepted) a direct benefit at Plaintiffs' expense.

70.     It would be unjust for Defendants to retain all pass fees, when Defendants failed to provide resort access for a substantial portion of the ski season.

71.     It would further be unjust for Defendants to retain all pass fees because, after resorts closed and Defendants no longer provided what Plaintiffs paid for, Defendants preserved their revenues by laying off 17,000 employees and substantially cutting costs.

72.     Defendants' unjust conduct was the proximate cause, and a substantial factor, in causing losses and damage to Plaintiffs.

**Claim 4**
**Conversion**
**(Ikon Pass Class)**

73.     Plaintiffs allege this claim individually and on behalf of the proposed Ikon Pass Class (collectively "Plaintiffs" as used in this claim).

74.     Plaintiffs incorporate by reference the facts alleged above.

75.     After the closure of resorts and the loss of pass benefits, Plaintiffs had a right to the return of pass fees proportional to the benefits and value lost.

76.     Plaintiffs never authorized Defendants to retain all pass fees after the closure of resorts.

77.     When Defendants retained pass fees after the early closure of resorts, this was an intentional, distinct, unauthorized act of dominion or ownership exercised over money rightly belonging to Plaintiffs.

78.     Plaintiffs have, through the filing of this lawsuit or other communications with Defendants, demanded the return of wrongfully retained pass fees.  In the alternative, it would have been futile to do so because Alterra publicly announced that it would not be refunding any pass fees.

79.     Defendants have refused to return pass fees for any pass holder.

80.     The money wrongfully converted by Defendants is a specific, identifiable sum that can be traced through Defendants' payment and accounting systems.

81.     Defendants' wrongful retainment of pass fees was a substantial factor and proximate cause in causing losses and damages to Plaintiffs.

**Claim 5**
**Money had and received**
**(Ikon Pass Class)**

82.     Plaintiffs allege this claim individually and on behalf of the proposed Ikon Pass

Class (collectively "Plaintiffs" as used in this claim).

83.     Plaintiffs incorporate by reference the facts alleged above.

84.     Defendants received pass fees from Plaintiffs, in exchange for a full ski season of

pass benefits.

85.     Plaintiffs' pass fees were intended to be used to benefit Plaintiffs by exchanging

these fees for resort access.

86.     When resorts closed early, retained pass fees were no longer used to benefit

plaintiffs and were not returned.

87.     Equity and good conscience require Defendants to return pass fees proportionate

to lost pass benefits and value.

88.     Defendants have refused to return any pass fees.

89.     Defendants' wrongful retainment of pass fees was a substantial factor and

proximate cause in causing losses and damages to Plaintiffs.

**Claim 6**
**Violation of California Unfair Competition Law (UCL)**
**(California Subclass)**

90.     The California Plaintiffs allege this claim individually and on behalf of the

proposed California Subclass (collectively "Plaintiffs" as used in this claim).

91.     Plaintiffs incorporate by reference the facts alleged above.

92.     California Unfair Competition Law (the UCL) forbids, in relevant part, any

"unlawful, unfair or fraudulent business act or practice."

93.     Defendants engaged in "unfair" business acts by retaining all pass fees after the early closure of resorts.

94.     This practice was immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  Defendants took consumers' money without providing fair value.

95.     By retaining pass fees, Defendants caused substantial financial injury to Plaintiffs.

96.     The harm to consumers greatly outweighs the public utility of Defendants' conduct.  Defendants' conduct has no public utility.

97.     This injury to passholders is not outweighed by any countervailing benefits to consumers or competition.  To the contrary, Defendants' conduct benefitted only Defendants by allowing Defendants to wrongfully retain tens of millions of dollars (or more) in pass fees, despite failing to provide a full ski season.

98.     Plaintiffs could not have reasonably avoided this injury.  There are no comparable competing passes offered to the Ikon pass resorts (much less comparable passes that refunded pass fees when resorts closed early).

99.     Defendants' unfair business practices were a substantial factor and proximate cause in causing losses and damages to Plaintiffs.

100.     Defendants' business practices additionally violated the "unlawful" prong of the UCL by violating the CLRA, the FAL, and other applicable law as alleged here.

101.     The UCL also forbids "unfair, deceptive, untrue or misleading advertising."

102.     As alleged above, to sell Ikon passes, Defendants promised unlimited resort access to consumers (subject to a few blackout dates for certain passes) for a complete ski season.  A reasonable consumer would believe that Defendants would either provide the promised access, or if Defendants did not provide it, return a proportionate amount of pass fees.

Defendants misleadingly omitted or concealed that they would not return any pass fees even if they did not provide the promised pass benefits.

103.    These misrepresentations and omissions were intended to induce Plaintiffs to purchase Ikon passes, and Plaintiffs saw, read and reasonably relied upon them.  Plaintiffs (a) would not have purchased passes on the offered terms absent Defendants' misrepresentations and omissions; (b) paid a price premium for Ikon passes based on Defendants' misrepresentations and omissions; and (c) did not receive the characteristics, benefits, or quantities promised by Defendants.

104.    Defendants' misrepresentations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiffs.

105.    Plaintiffs seek all monetary and nonmonetary relief allowed by law.

**Claim 7**
**Violation of California Consumer Legal Remedies Act (CLRA)**
**(California Subclass)**

106.    The California Plaintiffs allege this claim individually and on behalf of the proposed California Subclass (collectively "Plaintiffs" as used in this claim).

107.    Plaintiffs incorporate by reference the facts alleged above.

108.    Plaintiffs are "consumers" under Cal. Civ. Code § 1761(d).   Plaintiffs purchased Ikon passes for personal, family or household purposes.

109.    By offering Ikon passes that entitled passholders to unlimited access at Ikon resorts, Defendants offered a "service" under Cal. Civ. Code § 1761(b).  Defendants' actions, representations, and conduct have intended to result, and have resulted in, the sale of services to consumers.

110.     As alleged above, to sell Ikon passes, Defendants promised unlimited resort access to consumers (subject to a few blackout dates for certain passes) for a complete ski season.  A reasonable consumer would believe that Defendants would either provide the promised access, or if Defendants did not provide it, return a proportionate amount of pass fees. Defendants misleadingly omitted or concealed that they would not be returning any pass fees, even if they failed to provide the promised resort access.

111.     Defendants misrepresented the "characteristics," "uses," "benefits" or "quantities" of Ikon passes, under CLRA § 1770(a)(5).  Defendants also misrepresented that Ikon passes were of a particular standard or quality, under Cal. Civ. Code § 1770(a)(7).  Defendants further "[a]dvertis[ed] goods or services with intent not to sell them as advertised." 34. Cal. Civ. Code § 1770(a)(9),

112.     Defendants' misrepresentations and omissions were intended to induce reliance, and Plaintiffs saw and reasonably relied on them when purchasing Ikon passes.

113.     Plaintiffs (a) would not have purchased passes on the offered terms absent Defendants' misrepresentations and omissions; (b) paid a price premium for Ikon passes based on Defendants' misrepresentations and omissions; and (c) did not receive the characteristics, benefits, or quantities promised by Defendants.

114.     Defendants' misrepresentations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiffs.

115.     Plaintiffs mailed an appropriate demand letter to Defendants, consistent with California Civil Code § 1782(a).  Defendants failed to take corrective action without 30 days of receipt.   Accordingly, Plaintiffs seek damages and all monetary and nonmonetary relief allowed by law.

116.     A CLRA venue declaration is attached.

**Claim 8**
**Violation of California False Advertising Law (FAL)**
**(California Subclass)**

117.     The California Plaintiffs allege this claim individually and on behalf of the

proposed California Subclass (collectively "Plaintiffs" as used in this claim).

118.     Plaintiffs incorporate by reference the facts alleged above.

119.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq.,

prohibits public advertisements that are "untrue or misleading" and "which [are] known, or

which by the exercise of reasonable care should be known, to be untrue or misleading."

120.     As alleged above, to sell Ikon passes, Defendants promised unlimited resort

access to consumers (subject to a few blackout dates for certain passes) for a complete ski

season.  A reasonable consumer would believe that Defendants would either provide the

promised access, or if Defendants did not provide it, return a proportionate amount of pass fees.

Defendants misleadingly omitted or concealed that they would not be returning any pass fees,

even if they failed to provide the promised resort access.

121.     Defendants' advertisements were made in California and are advertisements,

under Bus. & Prof. Code § 17500, et seq., because they were promotional materials intended to

induce the public to purchase Ikon passes.  Defendants knew, or should have known through the

exercise of reasonable care, that these statements were inaccurate and misleading.

122.     Defendants' misrepresentations were intended to induce reliance, and Plaintiffs

saw, read and reasonably relied on them when purchasing Ikon passes.

123.     Plaintiffs (a) would not have purchased passes on the offered terms absent

Defendants' misrepresentations and omissions; (b) paid a price premium for Ikon passes based

on Defendants' misrepresentations and omissions; and (c) did not receive the characteristics, benefits, or quantities promised by Defendants.

124.    Defendants' misrepresentations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiffs.

125.    Plaintiffs seek all monetary and nonmonetary relief allowed by law.

**Claim 9**
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**
**(Illinois Subclass)**

126.    Plaintiff Bradley Briar brings this claim individually and on behalf of the Illinois Subclass (collective "Plaintiffs" as used in this claim).

127.    Plaintiffs incorporate by reference the facts alleged above.

128.    Plaintiffs and Defendants are each a "person" as defined by 815 ILCS § 505/1.

129.    Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in connection with the sale of Ikon passes.

130.    As alleged above, to sell Ikon passes, Defendants promised unlimited resort access to consumers (subject to a few blackout dates for certain passes) for a complete ski season.  A reasonable consumer would believe that Defendants would either provide the promised access, or if Defendants did not provide it, return a proportionate amount of pass fees. Defendants misleadingly omitted or concealed that they would not be returning any pass fees, even if they failed to provide the promised resort access.

131.    By engaging in these practices, Defendants also engaged in unlawful practices prohibited by the Uniform Deceptive Trade Practice Act (815 ILCS § 510), including the following provisions: representing that their goods and services had characteristics, uses, and benefits that they did not have, in violation of 815 ILCS § 510/2(5); representing that goods and

services are of a particular standard or quality when they are of another, in violation of 815 ILCS § 510/2(7); and engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of 815 ILCS § 510/2(12).

132.     Defendants' misrepresentations and omissions were intended to induce reliance, and Plaintiffs saw, read and reasonably relied on them (and were misled) when purchasing Ikon passes.

133.     Defendants' misrepresentations and omissions were material because they were likely to deceive reasonable consumers.

134.     Defendants' practices were immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  Defendants took consumers' money without providing fair value.

135.     By retaining pass fees, Defendants caused substantial financial injury to Plaintiffs.

136.     The harm to consumers greatly outweighs the public utility of Defendants' conduct (the benefit to consumers or competition).  Defendants' conduct has no public benefit.

137.     Plaintiffs could not have reasonably avoided this injury.  There are no comparable competing passes offered to the Ikon pass resorts (much less comparable passes that refunded pass fees when resorts closed early).

138.     Plaintiffs (a) would not have purchased passes on the offered terms absent Defendants' misrepresentations and omissions; (b) paid a price premium for Ikon passes based on Defendants' misrepresentations and omissions; and (c) did not receive the characteristics, benefits, or quantities promised by Defendants.

139.     Defendants' misrepresentations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiffs.

140.    Plaintiffs seek all monetary and nonmonetary relief allowed by law.

**Claim 10**
**Violation of Wisconsin Deceptive Trade Practices Act**
**(Wisconsin Subclass)**

141.    Plaintiff Keri Reid brings this claim individually and on behalf of the Wisconsin

Subclass (collective "Plaintiffs" as used in this claim).

142.    Plaintiffs incorporate by reference the facts alleged above.

143.    Plaintiffs are members of "the public," as that term is used in Wis. Stat. §

100.18(1).

144.    Defendants are each a "person, firm, corporation or association," as those terms

are used in Wis. Stat. § 100.18(1).

145.    With the intent to sell Ikon passes, Defendants made (or caused to be made)

statements to the Wisconsin public which contained assertions, representations, and statements

of fact which were untrue, deceptive, and misleading, in violation of Wis. Stat. § 100.18(1).

146.    These misleading statements and omissions were part of a plan or scheme not to

sell Ikon passes as advertised.

147.    As alleged above, to sell Ikon passes, Defendants promised unlimited resort

access to consumers (subject to a few blackout dates for certain passes) for a complete ski

season.  A reasonable consumer would believe that Defendants would either provide the

promised access, or if Defendants did not provide it, return a proportionate amount of pass fees.

Defendants misleadingly omitted or concealed that they would not be returning any pass fees,

even if they failed to provide the promised resort access.

148.    Defendants' misrepresentations and omissions were material because they were

likely to deceive reasonable consumers.

149.    Defendants' misrepresentations and omissions were intended to induce reliance, and Plaintiffs saw, read and reasonably relied on them (and were misled) when purchasing Ikon passes.

150.    As a direct and proximate result of Defendants' deceptive trade practices, Plaintiffs suffered a financial loss because Plaintiffs (a) would not have purchased passes on the offered terms absent Defendants' misrepresentations and omissions; (b) paid a price premium for Ikon passes based on Defendants' misrepresentations and omissions; and (c) did not receive the characteristics, benefits, or quantities promised by Defendants.

151.    Plaintiffs seek all monetary and nonmonetary relief allowed by law.

## Jury Demand

Plaintiffs demand a jury trial on all issues so triable.

## Prayer for Relief

Plaintiffs seek the following relief for themselves and for the proposed class and subclasses:

a)  An order certifying the asserted claims, or issues raised, as a class action;

b)  A judgment in favor of Plaintiffs and the proposed class and subclasses;

c)  Damages;

d)  Restitution;

e)  Rescission;

f)  Disgorgement, and other just equitable relief;

g)  Pre- and post-judgment interest;

h)  An injunction as allowed by law;

i)  Reasonable attorneys' fees and costs, as allowed by law;

j)  Any additional relief that the Court deems reasonable and just.

September 4, 2020

*s/ Jonas Jacobson*

**DOVEL & LUNER, LLP**
Jonas Jacobson
Simon Franzini
Greg Dovel
Julien Adams
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: (310) 656-7066
Fax: 310-656-7069
jonas@dovel.com
simon@dovel.com
greg@dovel.com
julien@dovel.com
Interim Co-Lead Class Counsel

**BURSOR & FISHER, P.A.**
Yeremey Krivoshey
Scott Bursor
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Fax: (925) 407-2700
ykrivoshey@bursor.com
scott@bursor.com
Interim Co-Lead Class Counsel

**CLRA Venue Declaration**

1.      I, Jonas Jacobson, declare as follows:

2.      I am an attorney at Dovel & Luner, Co-Lead Interim Class Counsel.  I am licensed to practice in the State of California and I am a member of the District of Colorado bar.

3.      The District of Colorado (Denver) is a proper place for trial under California Civil Code Section 1780(d) because Defendants' principal place of business is in Denver.  In addition, a substantial portion of the events alleged in the Consolidated Complaint occurred in this District.

4.      I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

*/s/ Jonas Jacobson*

Jonas Jacobson
September 4, 2020
Executed in Portland, Oregon