**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 20-cv-01057-RM-SKC
    Consolidated for Pretrial:
    20-cv-01158-RM-SKC
    20-cv-01175-RM-SKC
    20-cv-01186-RM-SKC
    20-cv-01254-RM-SKC
    20-cv-01347-RM-SKC
    20-cv-01520-RM-SKC
    20-cv-01583-RM-SKC
    20-cv-01691-RM-SKC
    20-cv-01699-RM-SKC
    20-cv-02021-RM-SKC
    20-cv-02907-RM-SKC

TIMOTHY GOODRICH,
NOLTE MEHNERT,
GEORGE T. FARMER
JOSEPH PANGANIBAN,
ERIK ERNSTROM,
W. WALTER LAYMAN,
BRADLEY BRIAR, and
KERI REID, each individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

ALTERRA MOUNTAIN COMPANY,
ALTERRA MOUNTAIN COMPANY U.S. INC., and
IKON PASS INC.,

    Defendants.

---

### ORDER ON MOTION TO DISMISS

---

Plaintiffs purchased Ikon ski passes for the 2019-20 ski season but, due to the COVID-19 pandemic, Defendants closed their ski resorts on March 15, 2020. Plaintiffs have requested a refund or other relief from Defendants but, although the CEO of Alterra Mountain Company

acknowledged "People didn't get what they paid for," Defendants have declined to do so. This consolidated putative class action lawsuit followed, with Plaintiffs asserting ten (10) claims for relief. At issue before the Court is Defendants' Motion to Dismiss (the "Motion"). Defendants contend Plaintiffs fail to state any claim for relief and, therefore, the complaint must be dismissed. On this record, for the reasons stated below, the Motion is granted in part and denied in part.

## I.    LEGAL STANDARD

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-movant, and draw all reasonable inferences in that party's favor. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). The complaint must allege a "plausible" right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007); *see also id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Conclusory allegations are insufficient, *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation marks omitted).

In determining whether a claim has been plausibly alleged, courts "do not require plaintiffs to establish a prima facie case. Instead, [courts] consider whether [plaintiffs] have set forth a plausible claim in light of the elements of their claim." *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1050 (10th Cir. 2020). *See also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (same).

"Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Exceptions to this restriction are "(1) documents that the complaint incorporates by reference, (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity, and (3) matters of which a court may take judicial notice." *Id.* (quotation marks and citations omitted). *See also Smallen v. The W. Union Co.*, 950 F.3d 1297, 1305 (10th Cir. 2020) (same). "Mere legal conclusions and factual allegations that contradict such…properly considered document[s] are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997). Thus, "if there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls." *Brokers' Choice of Am., Inc.*, 861 F.3d at 1105.

## II. BACKGROUND

Construing the factual allegations in a light most favorable to Plaintiffs, combined with the matters which the parties agree the Court may consider in evaluating the operative complaint, they allege the following. Defendants offered Ikon Passes which promised (1) "unlimited access" to "ski or ride as many days as you want" with (in some instances) some blackout dates, (2) at covered resorts, (3) during the 2019/20 ski season. Plaintiffs each accepted this offer when they purchased their Ikon Passes. However, in March 2020, Defendants closed their resorts due to the COVID-19 pandemic, in the midst of the 2019/20 ski season. Further, beginning about March 2020, various governmental entities issued stay-at-home orders. Plaintiffs demanded a return or refund of pass fees they paid which Defendants have retained; Defendants, however, have publicly announced they would not be refunding any pass fees. Unsurprisingly, this lawsuit followed.

Plaintiffs raise 10 claims for relief. Defendants move to dismiss all claims, raising a myriad of arguments challenging the plausibility of the allegations including that the Ikon Passes are "non-refundable" and are "season/frequency" passes. Plaintiffs' response advises they are no longer pursuing the claim for conversion (Claim 4).[1] For this reason, the Court will dismiss Claim 4. The Court examines Defendants' arguments as to the remaining nine claims below.

## III.    DISCUSSION

### A.  Defendants' "Actual Promises" and the Pandemic

Defendants' Motion has a section containing what they contend their "actual promises" were and how the pandemic precludes Plaintiffs from recovery on all claims. According to Defendants, Plaintiffs fail to plausibly allege:

- That Defendants made any specific promise or representation that could form the basis of a breach or other wrongful conduct. That Defendants promised a "complete ski season," a season of any length, or a guaranteed season. Instead, the allegations are of an undefined season, which would vary year to year, subject to Defendants' discretion, to be exercised in good faith; and

- That Defendants caused the season to end earlier than Plaintiffs had "subjectively expected." Instead, it was the pandemic and governmental orders that caused Plaintiffs' inability to ski after March 15, 2020. It was these orders which prohibited Defendants from operating indefinitely (the orders required closing of the ski areas) and prevented Plaintiffs from traveling or using the ski resorts (the orders to stay-at-home).

---

[1] Response, ECF No. 80, p. 16 n.9.

The Court finds, however, that such arguments must be considered in light of the elements of each claim and how, if at all, they show such claims are not plausibly pled. And, as set forth below, the Court finds Defendants' arguments unavailing.

## B. Breach of Contract

In order to recover on a claim for breach of contract, a plaintiff should plausibly allege (1) the existence of a contract between the parties; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff (causation).[2] *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992); *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, (10th Cir. 2018) (same). Under Colorado law, "'contract interpretation is a question of law for the court.'" *Spring Creek*, 887 F.3d at 1017 (brackets omitted) (quoting *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 696 (Colo. 2009)). In interpreting the contract, the Court is mindful of the following:

> The primary goal of contract interpretation is to determine and effectuate the intent and reasonable expectations of the parties. … To determine the intent of the parties, the court should give effect to the plain and generally accepted meaning of the contractual language. … [the Court] should be wary of viewing clauses or phrases in isolation, … instead reading them in the context of the entire contract, seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless.

*Spring Creek*, 887 F.3d at 1018 (quotation marks omitted). On a motion to dismiss, allegations in a complaint "do not overcome contradictory statements in the text of a contract" under consideration. *Id.* (quotation marks and citation omitted).

The Court's review of the Motion shows Defendants challenge the plausibility of the promises – the terms – of the contract (and, concomitantly, whether they performed) and the

---

[2] The parties cite to Colorado law; therefore, the Court assumes Colorado law applies on this issue. *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1017 (10th Cir. 2018).

element of causation. The Court starts with the terms of the contract and, relatedly, whether Defendants performed in accordance with the terms.

***Promises and any Breach.*** Plaintiffs contend they plausibly alleged that the contract was for unlimited access to Defendants' ski resorts for a particular period of time – the 2019/20 ski season. Defendants counter that the contract (promise) was for "unlimited access," but this meant frequency of access, i.e., an unlimited number of days, and only on days and during hours the resorts were open to the public. And, here, Defendants assert, it is undisputed the resorts were not open to the public. Construing the factual allegations in a light most favorable to Plaintiffs, and after reviewing the language of Defendants' "promises," the Court agrees with Plaintiffs.

As Plaintiffs alleged in the Complaint, and supported by the documents, Defendants promised that their Ikon Passes would provide "unlimited access" (frequency of access) for "19/20" (a period/length of time) with, in some instances, a few blackout dates. It goes without saying that these Ikon Passes are *ski* passes for the 2019/20 *ski* season. After all, context – and subject matter – matters.

This is confirmed, rather than negated, by the "Release of Liability, Waiver of Claims, Warning, Assumption of Risk, and Indemnity Agreement" (the "Agreement") which provides that "You must sign this Agreement in order to purchase a ***season/frequency pass*** (the "Pass") to access the Resorts at discounted pricing from the day ticket price and/or to participate in certain Activities at the Resorts." (ECF No. 76-2, p. 2 (entire sentence bold in original, italics added).) The purchase was not solely for a "frequency" pass, as Defendants assert and on which they focus. Though Defendants argue otherwise, the Court finds that, read as a whole, the promise is for unlimited access (unlimited number of days – "frequency") during the 2019/20 ski season ("season"). And, here, Plaintiffs plausibly alleged that Defendants closed the resort during the

2019/20 ski season – when the resorts' ski conditions were such that skiing was feasible, e.g., spring skiing. Defendants acknowledge as much, stating that the "2019/20 season ended earlier than prior seasons *due to the pandemic,*"[3] and not to ski conditions. That the date in which a ski season may end varies from season to season is not fatal to Plaintiffs' claim for the 2019/20 ski season. *See Bill Barrett Corp. v. YMC Royalty Co., LP*, No. 15-CV-02177-RBJ-KLM, 2016 WL 8310098, at *3 (D. Colo. Dec. 23, 2016) (court may supply "a term which is reasonable in the circumstances" and "missing terms can be supplied by law, presumption, or custom" (quotation marks and citations omitted) (applying Colorado law)).

Defendants' contention that this construction is foreclosed by common sense and would lead to absurd or unfair results is unavailing. Defendants' concern here is unfounded. Plaintiffs are not alleging that Defendants are foreclosed from exercising discretion, allegedly constrained by good faith and fair dealing, in determining when the *ski* season (conditions conducive for skiing) is over and, therefore, the resorts should close.[4] Plaintiffs are alleging that Defendants are liable *because* they did not do that very thing in this instance – a factual allegation that is not subject to challenge because the resorts were closed due to the pandemic. Concomitantly, it follows that, because the resort closures were based on the pandemic rather than the end of the ski season, Plaintiffs plausibly alleged Defendants failed to perform, or substantially performed, in accordance with the terms of the contract.[5] These allegations are sufficient to put Defendants on notice of their "alleged misconduct sufficient to prepare an appropriate defense." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (quotation marks and citation omitted).

---

[3] ECF No. 83, p. 7 n.1 (italics added).
[4] Based on Defendants' acknowledgement that the 2019/20 season ended sooner than other seasons due to the pandemic, it may reasonably be inferred that Defendants have metrics by which to evaluate when any given season should end – due to ski conditions.
[5] Defendants state they are not arguing impossibility. (ECF No. 83, p. 8.) Accordingly, the Court does not address Plaintiffs' arguments on impossibility or impracticability.

"***Causation" and the Pandemic.*** On the issue of causation, Defendants contend that, due to the stay-at-home orders, Plaintiffs could not have traveled to and used the ski resorts even if they were open. Thus, Defendants assert, the pandemic – not Defendants' resort closures – caused Plaintiffs' harm. Plaintiffs rejoin with three arguments.

First, Plaintiffs assert the promise was the right to access Defendants' resorts and that they were undisputedly denied this right. While this is true, Plaintiffs' assertion – without more – does not squarely address Defendants' argument that Plaintiffs could not have exercised such rights.

Next, Plaintiffs argue that the stay-at-home orders frustrated the purposes of the contract, which results in proportionate restitution, citing *Beals v. Tri-B Assocs.*, 644 P.2d 78 (Colo. App. 1982) and the Restatement (Second) of Contracts (the "Restatement") §§ 265, 272. The Court was unable to locate Defendants' response as to this specific argument. Regardless, § 265 provides that:

> Where, after a contract is made, a party's principal purpose is substantially frustrated *without his fault* by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.

(Italics added.) And, where this occurs, under § 272, "either party may have a claim for relief including restitution under the rules stated in §[] 377." *Id.*

Thus, as the Court understands Plaintiffs' argument, if, due to the pandemic, Defendants' performance (providing access to skiing/snowboarding) has been discharged, Plaintiffs are nonetheless entitled to restitution for any benefit (here, payment) they have conferred on Defendants. And "[r]estitution and damages based on breach of contract are different: Restitution measures the remedy by the *defendant's gain*….[It] differs in principle from damages, which

measure the remedy by the *plaintiff's loss* and seek to provide compensation for that loss." *Rocky Mtn. Nat. Gas, LLC v. Colorado Mtn. Junior Coll. Dist.*, 385 P.3d 848, 855 (Colo. App. 2014) (italics added). Here, Defendants' argument focuses on Plaintiffs' alleged lack of loss because they were precluded from accessing the resorts. But, in restitution, the focus is on Defendants' gain. Accordingly, on this record, the Court agrees Plaintiffs plausibly alleged restitution as a remedy for Defendants' alleged breach.

Finally, Plaintiffs contend that they only need to plead that Defendants' breach was a "substantial factor" in causing their injury, citing to *Nelson v. Lake Canal Co. of Colorado*, 644 P.2d 55, 59 (Colo. App. 1981). Defendants respond, in a footnote, that *Nelson* addresses a different situation entirely. That the "situation" was different does not render the case inapposite in evaluating whether Plaintiffs' claim is plausible.

In *Nelson*, the trial court denied relief because plaintiffs failed to prove that they incurred damages "*solely* as the result of" defendant's actions, *id.* at 58 (italics added), as it found plaintiffs failed to mitigate their damages. On appeal, plaintiffs argued they need not prove that their damages resulted solely from defendant's actions. Applying Colorado law, the *Nelson* court agreed, stating that since the relationship between the parties arose out of contract, contract principles of causation should be applied. And, under contract principles, "[i]n order to establish liability the plaintiff must show that the defendant's breach was 'a substantial factor' in causing the injury." *Id.* at 59 (quoting 5 A. Corbin, Contracts [§] 999 (1964)). Professor Corbin describes this rule of contract law as follows:

> The plaintiff's total injury may have been the result of many factors in addition to the defendant's tort or breach of contract. In such a case must the defendant pay damages equivalent to the total harm suffered? Generally the answer is, Yes, even though there were contributing factors other than the defendant's own conduct.… Must the plaintiff show the proportionate part played by the defendant's breach of contract among all the contributing factors causing the injury, and must the loss

be segregated proportionately? To these questions the answer is generally, No. In order to establish liability the plaintiff must show that the defendant's breach was "a substantial factor" in causing the injury.

11 Corbin on Contracts § 55.9 (2020). Accordingly, *Nelson* supports Plaintiffs' argument. On this record, the Court cannot say that Plaintiffs fail to state a claim as a matter of law.

*"Illusory Contract" – "Non-Refundable Payment."* Ikon Pass holders are subject to the following "**PAYMENT PLAN & CANCELLATION POLICY**":

- "ALL IKON PASS AND IKON BASE PASS PURCHASES PAID-IN-FULL ARE NON-REFUNDABLE."

- "You will be charged a non-refundable $199 deposit and a pass insurance premium (if applicable) which are due at the time of enrollment."

- "If you cancel this purchase agreement by providing Cancellation Notice prior to August 31, 2019, you will be reimbursed for all payment amounts paid and received by us as of the cancellation date less the $199 non-refundable deposit, and a $99 cancellation administration fee, and any pass insurance premium (if applicable)."

- "All pass purchases paid in full are considered non-refundable."

(ECF No. 76-5, p. 2 (bold and capitals in original).) Relying on this "no-refund" provision, Defendants' final argument is that the contract is not illusory and Plaintiffs cannot recover. Plaintiffs counter that this non-refundable clause means that if a *consumer* who bought the Ikon Pass cancels or returns it, the purchase price will not be refunded. It does not apply to allow a *seller* who cancels or revokes the Ikon Pass to cancel and keep the consumer's money. The Court agrees with Plaintiffs.

Defendants rely on two cases, neither of which the Court finds persuasive. In *Martin v. United Airlines, Inc.*, 727 F. App'x 459 (10th Cir. 2018), the contract between United and the purchasers of the airline tickets provided that United "will not refund any portion of a Ticket that is purchased with a non-refundable fare." *Id.* at 460. Thus, the Tenth Circuit found plaintiffs' breach of contract claims failed where *plaintiffs*, who purchased several nonrefundable tickets,

were unable to take the trips and canceled their bookings. *See also Robinson v. Am. Airlines, Inc.*, 743 F. App'x 233 (10th Cir. 2018) (rejecting plaintiffs' breach of contract claim for refund of nonrefundable airline tickets they purchased but did not use). No such fact allegations are present here.

Similarly, in *Stokes v. DISH Network, L.L.C.*, 838 F.3d 948 (8th Cir. 2016), DISH's programming was interrupted as to certain channels but the contract between DISH and its subscribers specifically covered this scenario. That contract provided that subscribers would not be "entitled to any refund because of deletion, rearrangement or change of any programming, programming packages or other Services." *Id.* at 951, 955 (applying Colorado law). Under such facts, the Eighth Circuit found that the district court erred in denying a motion to dismiss because it "allowed Plaintiffs to recover monetary relief for Services interruptions, a remedy that is unambiguously precluded by the express terms of the parties' contractual bargain." *Id.* at 955. No such contractual provision exists in this case.

Plaintiffs rely on *Allied Erecting & Dismantling Co. v. United States Steel Corp.*, 726 F. App'x 279 (6th Cir. 2018) which, although not controlling, the Court finds persuasive. In *Allied*, under the parties' agreement, United States Steel paid Allied a "non-refundable advance payment" which United States Steel anticipated it would recoup through manufacturing work by Allied. When Allied failed to provide assurances it would perform manufacturing work, United States Steel sued. Allied countered that the advance was non-refundable even if Allied refused to perform. Although that case involved an "advance," the Sixth Circuit focused on the "non-refundable language," finding that there was no evidence that the parties intended for Allied to keep that advance payment even if *Allied itself* totally breached. *See Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502 (S.D.N.Y. 2012) (The "non-refundable fee was

paid by [plaintiff] not as a gift but as one element in a bargained for exchange and, in that context, the word non-refundable cannot be construed as a license to provide little or no consideration and to still retain an advance payment." (quotation marks and citation omitted)). The same can be said here.

Defendants also rely on the "non-refundable" language but the Court finds such language – at this juncture – does not support that Plaintiffs' claim is implausible. Indeed, read as a whole, it supports Plaintiffs' position that the "Cancellation Policy" applies such that if *they* cancelled or revoked the contract, they would not be entitled to a refund: "If *you* cancel this purchase agreement…you will be reimbursed for all payment amounts paid and received by us as of the cancellation date less the $199 non-refundable deposit." (Italics added.) Accordingly, the Court finds Plaintiffs' breach of contract claim is also not subject to dismissal on this basis.

### C. The Breach of Implied Duty of Good Faith and Fair Dealing

"Under Colorado law, every contract contains an implied duty of good faith and fair dealing." *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006). A breach of the duty of good faith and fair dealing gives rise to a claim for breach of contract. *Id.* "The duty of good faith and fair dealing may be relied upon 'when the manner of performance under a specific contract term allows for discretion on the part of either party.'" *Id*. (quoting *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995)). "Discretion in performance occurs 'when the parties, at formation, defer a decision regarding performance terms of the contract' leaving one party with the power to set or control the terms of performance after formation." *Id.* (quoting *Amoco Oil Co.*, 908 P.2d at 498).

The implied duty of good faith and fair dealing "is breached when a party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to

deprive the other party of the benefit of the contract." *ADT Sec. Servs., Inc. v. Premier Home Protection, Inc.*, 181 P.3d 288, 293 (Colo. App. 2007). The duty of good faith, however, cannot be used to "contradict terms or conditions for which a party has bargained"; "obligate a party to accept a material change in the terms of the contract"; "assume obligations that vary or contradict the contract's express provisions"; or "permit a party to inject substantive terms into the contract." *Id.* It also cannot be used to "establish[] new, independent rights or duties." *Stokes*, 838 F.3d at 953.

Plaintiffs' breach of good faith claim alleges that "to the extent that the contract gave Defendants any discretion in deciding whether to return pass fees, Defendants failed to exercise that discretion in good faith by retaining all fees after resorts closed."[6] Defendants argue this claim fails because the contract does not require Defendant to consider refunds and, in fact, provides pass fees are non-refundable. Plaintiffs counter that the "no-refund" clause applies where the passholder wants to cancel and that the reasonable expectation of customers was that Defendants would refund portions of the season pass fees if they ended access before the end of the ski season. The Court agrees, in part, with both parties' arguments but that does not save Plaintiffs' claim.

As the Court discussed above, the contract's no-refund clause does not apply to bar a passholder's claim for a refund where Defendants allegedly failed to fully perform. That finding, however, does not mean that the no-refund clause applies to support a claim against Defendants where they allegedly failed to fully perform. In other words, that clause has no application under the claims and theories raised in this case.

The leaves the question of what contractual term allows for discretion because the implied covenant applies "only when the manner of performance under *a specific contract term*

_____

[6] ECF No. 9, Complaint, ¶ 64.

allows for discretion on the part of either party." *Amoco Oil Co.*, 908 P.2d at 498 (italics added). The Court agrees with Defendants that Plaintiffs cannot – essentially – "hijack" the implied covenant to provide a refund mechanism where none exists. Nowhere do Plaintiffs plausibly allege that any *contract term* provides for any refund should Defendants fail to perform. Accordingly, there can be no plausible justified expectations by Plaintiffs of any implied duty by Defendants to provide any refund. Defendants' Motion is granted as to this claim.

### D. Unjust Enrichment

"Unjust enrichment is a form of quasi-contract or contract implied in law that does not depend in any way upon a promise or privity between the parties." *Robinson v. Colorado State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008). To recover under an unjust enrichment theory, a plaintiff must show that "(1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *Id.* "In general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract." *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003); *see also W. Ridge Grp., LLC v. First Tr. Co. of Onaga*, 414 F. App'x 112, 120 (10th Cir. 2011) (same).

There are two exceptions to this principle. "First, a party can recover on a quasi-contract when the implied-in-law contract covers conduct outside the express contract or matters arising subsequent to the express contract." *Interbank Invs., LLC*, 77 P.3d at 816. "Second, a party can recover on a quasi-contract when the party will have no right under an enforceable contract." *Id.* (quotation marks and citation omitted). "For example, quasi-contractual recovery may be allowed when an express contract failed or was rescinded." *Id.*

Defendants contend that unjust enrichment is not available because the parties agree their relationship is governed by an express contract. Plaintiffs respond that a party pursuing contract claims may also pursue unjust enrichment claims in the alternative and an unjust enrichment claim may be allowed where an express contract is rescinded. Defendants reply that the "rescission" exception is inapplicable here because Plaintiffs pled no basis for rescission of the contract. The Court agrees with Defendants.

Plaintiffs' claim for breach of contract *requests*, alternatively, rescission as a remedy. The Court's review of the allegations, however, shows Plaintiffs failed to plausibly *plead* any basis to support such a remedy. *See, e.g., EarthInfo, Inc. v. Hydrosphere Res. Consultants, Inc.*, 900 P.2d 113, 118 (Colo. 1995) ("Rescission of a contract may be granted if the facts show a substantial breach, that the injury caused by the breach is irreparable, and that damages are inadequate, difficult or impossible to assess."); *Whatley v. Crawford & Co.*, 15 F. App'x 625, 629 (10th Cir. 2001) (A party seeking to remedy "fraudulent inducement" of a contract may elect to rescind the entire contract.) (applying Colorado law). Accordingly, Defendants' Motion is granted as to the claim for unjust enrichment.

### E. Money Had and Received

"A plaintiff can maintain an action for money had and received whenever the defendant has received money which, in equity and good conscience, he ought to pay over." *Monday v. Robert J. Anderson, P. C.*, 77 P.3d 855, 857 (Colo. App. 2003) (quotation marks and citation omitted); *see also Hollander v. Zito*, No. 11-CV-00499-MSK-BNB, 2011 WL 5834688, at *6 (D. Colo. Nov. 21, 2011) (same). But the economic loss doctrine precludes duplicative claims under tort and contract theories. *See Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1279 (Colo. 2000). Nonetheless, where the economic loss doctrine applies to an action for money had and

received, it is not subject to dismissal on that basis where the contracting party may be entitled to rescind the contract. *Hollander*, 2011 WL 5834688, at *6.

Defendants contend the claim for money had and received is barred by the economic loss rule. Plaintiffs, relying on *Hollander*, argue their claim is an "equitable remedy that lies where a rescission takes place."[7] But, as Defendants counter, Plaintiffs have not pled any ground to rescind the parties' express contract. Thus, based on the parties' arguments, the Court agrees this claim is also subject to dismissal because, as previously discussed, Plaintiffs have not plausibly pled any grounds for recission of the parties' contract.

### F. California's Consumer Protection Statutes

Plaintiffs raise three claims under the California consumer protection laws (collectively, "California Statutory Claims"): the Unfair Competition Law ("UCL"); Consumer Legal Remedies Act ("CLRA"); and False Advertising Law ("FAL").[8] Plaintiffs seek monetary and nonmonetary relief under all California Statutory Claims. The parties raise a number of arguments as to why these claims – where they request equitable relief – are plausible or implausible. The Court addresses them below and finds the law cited by the parties do not fully support either side's arguments.

#### 1. *Adequate Remedy at Law – California Statutory Claims.*

The California Statutory Claims are equitable claims. Defendants contend that because Plaintiffs have an adequate remedy at law – damages – these claims fail in so far as they request equitable relief. Relying on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) and its progeny, Defendants assert that – except for the CLRA claim for damages[9] – the California

---

[7] ECF No. 80, p. 16 (quotation marks omitted).
[8] ECF No. 66, Claims 6 (UCL), 7 (CLRA), and 8 (FAL).
[9] Defendants acknowledge this in footnote 10, to which Plaintiffs respond in their footnote 10. (ECF No. 73, p. 20 n.10; No. 80, p. 17 n.10.) The parties expressly agree that damages may be recoverable under the CLRA and,

Statutory Claims are subject to dismissal on this basis. Plaintiffs counter that they may plead equitable claims in the alternative and that *Sonner* stands for the proposition that, at some point in time "very deep into the litigation, allowing plaintiffs to continue to pursue alternative remedies becomes untenable." Defendants reply that *Sonner* is not so limited, and that Plaintiffs' cases are distinguishable as they were either decided before *Sonner* or failed to consider *Sonner*.

In *Sonner,* the operative complaint requested injunctive relief and restitution under the UCL, and injunctive relief, restitution, and damages under the CLRA. On the brink of trial after more than four years of litigation, plaintiff Sonner voluntarily dismissed her claim for damages under the CLRA, leaving only equitable claims. Defendant thereafter moved to dismiss arguing Sonner failed to establish that she lacked an adequate legal remedy as required by federal equitable principles and California law. Sonner then sought to amend her complaint to reallege the CLRA damages claim. The district court granted defendant's motion to dismiss and denied the motion to amend. Sonner appealed. The Ninth Circuit stated:

> we hold that the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action.

971 F.3d at 844. Thus, because Sonner did not allege that she lacked an adequate remedy at law and, "more importantly," conceded that she sought the same sum in equitable restitution as she requested in damages, the Ninth Circuit found her equitable restitution claims were properly dismissed. *Id.*

As the Court reads *Sonner*, if a plaintiff has two remedies – legal and equitable – she cannot forgo the legal remedy and elect to pursue the equitable remedy. Sonner had pled both

---

implicitly, that damages are *not* recoverable under the FAL and UCL. *See Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV2000769CJCGJSX, 2020 WL 5492990, at *4 (C.D. Cal. Sept. 9, 2020) (stating that UCL remedies are limited to restitution and injunctive relief and do not include damages but that CLRA remedies include damages and equitable relief; *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1137 (C.D. Cal. 2005) ("A plaintiff suing under the CLRA may recover actual and punitive damages; those remedies are denied under both the UCL and the FAL.").

equitable and legal remedies without issue. She ran afoul of the "no adequate legal remedy" prohibition when she dismissed the legal remedy – leaving only equitable remedies – without adequately showing she had no legal remedy. Here, in Plaintiffs' case, they have asserted a breach of contract claim seeking legal and equitable remedies, which the Court has found survives the Motion. And the Court finds it need not decide whether Plaintiffs may plead claims in the alternative in light of *Sonner* because even if they could do so, they have failed to do so.

The Court's review of the complaint shows the absence of any allegations that Plaintiffs have no legal remedy or that any legal remedy is sufficient or inadequate. And, contrary to Plaintiffs' assertion, the Court finds that *Sonner* "dooms the claim for equitable relief at any stage." *Audrey Heredia v. Sunrise Senior Living LLC*, No. 818CV01974JLSJDE, 2021 WL 819159, at *4 (C.D. Cal. Feb. 10, 2021).

Plaintiffs' cases do not support a contrary conclusion because they are inapposite. For example, in *Infanzon v. Allstate Ins. Co.*, No. LACV1906483JAKSKX, 2020 WL 3891671, at *6 (C.D. Cal. Apr. 14, 2020), decided before *Sonner*, the *Infanzon* court stated that "[b]ecause FAC [First Amended Complaint] does not plausibly allege that restitution or injunctive relief is warranted, it is not necessary to reach the issue whether, on a motion to dismiss, it can be determined whether Plaintiff may seek an injunction and/or restitution as an alternative to available legal remedies. Therefore, the issue is not addressed in this Order." Similarly, in *Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*, No. 2:17-CV-01515-KJM-AC, 2020 WL 3893395 (E.D. Cal. July 10, 2020), the *Aerojet* court did state "there is no basis in California or federal law for prohibiting the pursuit of alternate remedies at the early pleading stage." 2020 WL 3893395, at *4 (quotation marks and brackets omitted). The *Aerojet* court did so, however,

without acknowledging *Sonner* or, importantly, considering whether the alternative claim was nonetheless plausibly pled, i.e., pleading, alternatively, that there was no adequate remedy at law.

In summary, under *Sonner*, in the absence of pleading that they have no adequate remedy at law, Plaintiffs' California Statutory Claims seeking equitable relief fail.[10] Accordingly, Plaintiffs' claims under the UCL and FAL are dismissed in their entirety, but Plaintiffs' CLRA claim is dismissed only as to their request for equitable remedies. The CLRA claim survives under this argument, but as to damages only. *See Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV2000769CJCGJSX, 2020 WL 5492990, at *4 (C.D. Cal. Sept. 9, 2020). The Court addresses next whether the CLRA claim survives Defendants' other arguments.[11]

**2.** ***"Goods or Services" under the CLRA***

The CLRA provides, in relevant part:

> The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful:
> ***
> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have.
>
> ***
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
>
> ***
>
> (9) Advertising goods or services with intent not to sell them as advertised.

---

[10] To the extent Defendants contend that every time there are claims seeking legal remedies and equitable remedies under the California Statutory Claims, the equitable claims must fall, Court finds *Sonner* is not so broad.
[11] As the Court finds the UCL and FAL claims do not survive Defendants' first argument, it need not address Defendants' remaining arguments as to these claims.

Cal. Civ. Code § 1770(a)(5), (a)(7), (a)(9). "Services" is defined to "mean[] work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Cal. Civ. Code § 1761(b).

Plaintiffs alleged Defendants offered "services" – the Ikon Passes which promised unlimited resort access to consumers – in violation of these provisions. Defendants move to dismiss on the basis that the passes do not qualify as "goods or services" under the CLRA.[12] Instead, Defendants contend, the passes are "temporary licenses" to access Defendants' resorts and the "services" which Plaintiffs rely on are "ancillary" to such licenses. Plaintiffs counter that Defendants are not merely selling access to land; they are selling extensive ski-related services as well. The parties cite to no controlling authority directly on point on this issue. The question is which, if any, of the legal authorities the parties rely upon the Court finds persuasive. The Court starts with the California Supreme Court case of *Fairbanks v. Superior Ct.*, 46 Cal. 4th 56, 205 P.3d 201 (2009).

In *Fairbanks*, at issue was whether life insurance policies issued by defendant insurers were goods or services under the CLRA. The *Fairbanks* court found that life insurance is an insurer's contractual obligation to pay money and, therefore, not a service. In addition, the *Fairbanks* court found that ancillary services that insurers provide to purchasers of insurance, e.g., helping consumers to select policies, do not bring the policies within coverage of the CLRA. Thus, it appears that the *Fairbanks* court focused on what did the purchaser purchase.

The two unpublished District of California cases Defendants primarily rely upon stated that persons who purchased admissions to SeaWorld, an amusement park, purchased "temporary

---

[12] As Plaintiffs do not contend the Ikon Passes are "goods," the Court does not address any arguments on whether they are or are not goods.

licenses" that allowed the purchasers nothing more than entry into the park.[13] That to find

otherwise "requires a stained and unnatural construction of the term" "services." *Hall v.*

*SeaWorld Ent., Inc.*, No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911, at *14-15 (S.D. Cal. Dec.

23, 2015); *see also Kouball v. SeaWorld Parks & Ent., Inc.*, No. 20-CV-870-CAB-BGS, 2020

WL 5408918, at *5 (S.D. Cal. Sept. 9, 2020) ("annual passes merely allow access to SeaWorld's

parks and do not qualify as services"), appeal filed No. 20-56069 (9th Cir. Oct. 14, 2020). As

applied to the factual allegations at issue, this Court disagrees these cases support such a finding

here.

The Court finds the case of *Anderson v. SeaWorld Parks & Ent., Inc.*, No. 15-CV-02172-

JSW, 2016 WL 8929295 (N.D. Cal. Nov. 7, 2016), relied on by Plaintiffs, more in line with the

arguments and allegations at issue here. In *Anderson*, plaintiffs alleged that SeaWorld provided

"educational and entertainment services," for which they were required to purchase admission

tickets. The *Anderson* court disagreed with the *Hall* court. After examining *Fairbanks* and the

legislative history of the CLRA, the *Anderson* court found that "educational and entertainment

services" were encompassed within the definition of "services" under the CLRA. Thus, under

*Anderson*, admission tickets may fall within the definition of "services."[14]

After examination of *Fairbanks*, this Court agrees that, based on Plaintiffs' arguments,

they have plausibly shown that the ski passes are encompassed within the definition of

"services." As stated, the *Fairbanks* court focused on what the purchaser purchased. And, here,

ski pass holders plausibly alleged they purchased more than just a license to be on the slopes. On

---

[13] Defendants also rely on *Lazebnik v. Apple, Inc.*, No. 5:13-CV-04145-EJD, 2014 WL 4275008 (N.D. Cal. Aug. 29, 2014), but that case is inapposite because, among other reasons, it was dealing with what is a "good." The *Lazebnik* court found "that the Season Pass [for Season 5 of Breaking Bad] is not a 'good' within the meaning of the CLRA because, as Plaintiff acknowledges, it is either software or a license, not a 'tangible chattel.'" 2014 WL 4275008, at *5.

[14] The Court is not agreeing – or disagreeing – with the *Anderson* court that SeaWorld admission tickets are services; that is not at issue here. What the Court is agreeing with is that passes – or admission tickets – may fall within the definition of "services."

the contrary, Plaintiffs purchased Defendants' services such as providing groomed trails and ski lifts and gondolas to reach such trails. These services are not ancillary to but, instead, are at heart of what a ski pass holder purchased. Accordingly, Defendants' Motion to dismiss the CLRA claim on this basis is denied.

### 3. *Deception or Misrepresentation under the CLRA*

As stated, Plaintiffs alleged liability under § 1770(a)(5), (a)(7), and (a)(9) which provides, in relevant part, as follows:

> (a)(5): Representing that goods or services have…characteristics,…uses, benefits, or quantities that they do not have….
>
> (a)(7): Representing that goods or services are of a particular standard, quality….
>
> (a)(9): Advertising goods or services with intent not to sell them as advertised.

Defendants raise a number of challenges as to why Plaintiffs' CLRA claim is implausible. The Court addresses them below.

***Application of Rule 9(b).*** Defendants argue that Plaintiffs' allegations – whether based on fraud or negligent misrepresentation – must satisfy the heightened pleading requirements under Rule 9(b). Plaintiffs counter that allegations of non-fraudulent conduct need not satisfy the heightened pleading requirement.

In *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), relied on by Defendants, the Ninth Circuit found that "[b]ecause Davidson's common law fraud, CLRA, FAL, and UCL causes of action are all grounded in fraud, the FAC must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)." However, as recognized by the Ninth Circuit in *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (cited in *Davidson*), "in a case where fraud is not an essential element of a claim, only allegations…of fraudulent conduct must satisfy the heightened

pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." Although *Kelley v. Rambus, Inc.*, 384 F. App'x 570, 573 (9th Cir. 2010) stated that "Kelley's state law claims for common law fraud and negligent misrepresentation fail to meet the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure," that decision was not selected for official publication and also did not provide any analysis for such a finding.

The Court's review shows that is it not one position or the other. Instead, the Court agrees with Plaintiffs to the extent that if fraudulent and non-fraudulent conduct is claimed, only the fraudulent conduct need be plead with particularity. However, where the claim is grounded in fraud, the pleading of that claim as a whole must be plead with particularity. *See Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 997 (N.D. Cal. 2009).[15]

The Court also agrees that, if Plaintiffs were required to plead with particularity as to their CLRA claim, they have done so. Plaintiffs identified the who (Defendants), what (the failure to disclose that should Defendants close their resorts – for any reason – prior to the end of the 2019/20 ski season they would not return a proportionate amount of the pass fees), where and how (on Defendants' website), and when (during their purchases, e.g., March 2019 for Plaintiff Panganiban). And that the promise of a 2019/20 season (what Plaintiffs termed a "complete season") was false and misleading because a reasonable consumer would believe that Defendants would provide the promised access or would return a proportionate amount of the pass fees if they failed to do so. *See Davidson*, 889 F.3d at 963. Assuming the truth of the allegations, and construing them in a light most favorable to Plaintiffs, which the Court must do at this stage, they satisfy Rule 9(b).

---

[15] To be clear, there is a difference between whether fraud is an essential element of a CLRA claim and whether Rule 9(b) may nonetheless apply to the CLRA claim.

***Elements of CLRA Claim.*** In order to state a claim under § 1770(a)(5) and (a)(7) of the CLRA, "a plaintiff must allege: (1) a misrepresentation; (2) reliance on that misrepresentation; and (3) damages caused by that misrepresentation." *In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 920 (9th Cir. 2014) (citing *Marolda*, 672 F. Supp. 2d at 1002-03). A plaintiff need not plead fraud to state a claim. *Id.* To state a claim under § 1770(a)(9), however, requires pleading fraud as an element – the intent to defraud. *Id.* at 921; *see also Marolda*, 672 F. Supp. 2d at 1003. Defendants raise essentially five arguments.

First, Defendants argue Plaintiffs failed to plausibly allege any "actual misrepresentation" because their alleged promise of "unlimited access" for a "complete season" (the 2019/20 ski season) is not a "'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'" (ECF No. 73, p. 22 (quoting *Hodges v. Apple, Inc.*, No. 13-CV-01128-WHO, 2013 WL 6698762, at *5 (N.D. Cal. Dec. 19, 2013)). At bottom, Defendants assert that there was no promise or representation about the length of the 2019/20 ski season. But, as Plaintiffs respond, and with which the Court agrees, Defendants advertised a "ski season" and a reasonable consumer would understand this was a promise for a definite period: the period of the 2019/20 year "during which snow conditions allow for skiing and when people typically go skiing."[16]

Next, Defendants contend that the statement – misrepresentation – was not deceptive when made because they could not have known about the pandemic or ensuing governmental closure orders. But, as Plaintiffs counter, they are alleging they were misled by what Defendants would do if their resorts closed – for whatever reason: that they would keep all of the passholders' money.

---

[16] ECF No. 80, p. 21.

Third, Defendants argue that they disclosed the payments were "non-refundable" and, therefore, there was no deception or failure to disclose. That argument is unavailing because, as stated above, the "non-refundable" provision is inapplicable under the factual allegations here.

Fourth, Defendants claim Plaintiffs failed to allege an actionable omission because the CLRA obligates a duty to disclose only safety information or, alternatively, to plead a physical defect in the ski passes. Plaintiffs respond that is not so because the safety hazard pleading requirement is not necessary in all cases.

Defendants rely primarily on *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) while Plaintiffs rely primarily on *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018). The Court's analysis of the cases does not precisely align with either side's arguments.

In *Wilson*, plaintiffs alleged Hewlett-Packard concealed a design defect in certain laptops – a product. Plaintiffs argued the concealed fact must only be material – that it need not relate to a safety issue. The *Wilson* court found otherwise, finding, under the factual allegations there, that there was no duty to disclose absent allegations "that the design defect caused an unreasonable safety hazard." *Id*. at 1143. This finding may arguably support Defendants' position.

The *Hodsdon* court stated that "'to be actionable the omission must be contrary to a representation actually made by the defendant, or *an omission of a fact the defendant was obliged to disclose*.'" *Hodsdon*, 891 F.3d at 861 (italics in original) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 836, 51 Cal. Rptr. 3d 118, 126 (2006), as modified (Nov. 8, 2006)). The *Hodsdon* court acknowledged that "recent state-court cases have cast doubt on the breadth of this Circuit's precedent about the duty to disclose" and "whether *Wilson's* safety hazard requirement applies in all circumstances." *Hodsdon*, 891 F.3d at 860, 861-62. The *Hodsdon* court did not reach the issue because it found that even if it applied plaintiff's proposed

tests, he could not state a claim. Specifically, the *Hodsdon* court found plaintiff was required to allege that the "physical defect" in question "affect[ed] the central functionality of the chocolate *products*" at issue. *Id*. at 862 (emphasis added), 864. Defendants rely on this statement – without further analysis – in support of their argument for dismissal, but the Court is not persuaded. At issue here are *services*, not products (goods).

This leaves the Court with the issue of the "safety hazard" pleading requirement and under what circumstances it may not apply. On this issue, the Court is also not convinced by Defendants' argument that it is one or the other – safety hazard or physical defect/central functionality – and no other. Instead, the Court agrees with Plaintiffs that there may be instances where such pleading is not required, as the *Hodsdon* court acknowledged. This is supported by the fact that the *Wilson* court distinguished several cases which the *Wilson* plaintiffs relied upon, to argue they were not required to plead a safety hazard, because those cases "concerned *services* rather than manufactured products." *Id*. at 1143 (italics added). In fact, even a cursory review of the cases cited by the *Wilson* court supports such a distinction – that the California courts were addressing allegedly defective *products*. *See, e.g., Daugherty*, 51 Cal. Rptr. 3d at 127 ("Daugherty alleged no facts that would establish Honda was "bound to disclose" the defect in the F22 engine."); *Wilson*, 668 F.3d at 1141 (discussing cases involving consumer products). Thus, on this record, the Court cannot say that, as a matter of law, Plaintiffs have not – and cannot – plead an actionable omission.[17]

Finally, Defendants claim Plaintiffs failed to allege an actionable omission because they cannot plausibly allege any duty by Defendants to make further disclosures. Defendants argue they did not have any secret knowledge that a pandemic would force closures of the resorts and did not make any representations about the length of a ski season. But, as Plaintiffs counter, the

---

[17] That is not to say, however, that on a more detailed briefing on this issue, the Court may not find otherwise.

knowledge which they rely on is Defendants' alleged knowledge that they would not provide any proportionate refund of ski pass fees should they close for *any* reason prior to the end of the ski season – a period (length) of time "during which snow conditions allow for skiing and when people typically go skiing."[18] Thus, this argument is also rejected.

***Loss Caused by Alleged Deception.*** As their final argument, Defendants contend Plaintiffs cannot establish any loss "as a result of" – a causal link between – Defendants' alleged conduct and Plaintiffs' claimed loss. Here, Defendants rely on their previously raised argument that Plaintiffs' losses are precluded by the pandemic – that Defendants were forced to shut down and Plaintiffs' could not have used their passes. The Court has already rejected this argument. The Court rejects that argument here as well, and for the additional reason which Plaintiffs raise.

As the Court understands Plaintiffs' position, they would not have purchased the ski passes on the terms offered had they known that if Defendants did not provide the promised resort access during the 2019/20 ski season they would nonetheless retain all pass fees. (*See* Complaint, ¶¶ 5-12, 113.) Plaintiffs contend that because of Defendants' failure to provide a refund upon the closures of the resorts, the ski passes were of lesser value than advertised. Under this theory, it matters not whether Plaintiffs could have been able to access the resorts. Thus, the Court finds *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), relied upon by Plaintiffs, supports their position that the claim is sufficiently pled.

In *Davidson*, plaintiff paid a premium for "flushable" wipes which she alleged was in fact not flushable contrary to Kimberly-Clark's representation. As relevant here, the district court dismissed plaintiff's claim for failure to allege that her use of the wipes damaged her plumbing, pipes, or septic system. On appeal, the Ninth Circuit reversed, stating "under California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to

---

[18] ECF No. 80, p. 21.

maintain a cause of action." 889 F.3d at 965. "Thus, a consumer's allegation that she would not have bought the product but for the misrepresentation is sufficient to allege causation and to allege economic injury." *Id*. at 965-66 (quotation marks, ellipsis, brackets, and citation omitted). Plaintiffs have done so here.

### G. The Illinois and Wisconsin Consumer Protection Statutes

Defendants assert that the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") claim (Claim 9) and the Wisconsin Deceptive Trade Practices Act ("Wisconsin Act") claim (Claim 10) "fail for largely the same reasons"[19] why the California Statutory Claims fail. But the Court has found that the California Statutory Claims do not *all* fail as the CLRA claim survives as to its request for monetary relief. Thus, without further elaboration or analysis by Defendants, the Court cannot say that the Illinois and Wisconsin consumer claims fail as well based on such "same reasons." Thus, the Court examines the other arguments, starting with the ICFA.

*ICFA – "Unfair Practices."* Plaintiffs argue that Defendants' contentions about the insufficiency of the misrepresentations and omissions also fail because the ICFA claim also includes an "unfair" practices theory. Defendants respond this theory also fails, relying on their prior argument that they never stated how long the ski season would last and they did not cause the resorts to close earlier. The Court has previously rejected this argument and does so again here.

*ICFA – Damages.* Defendants also argue that the remedy under the ICFA is limited to an injunction and Plaintiffs failed to adequately plead the grounds for granting injunctive relief. Defendants, however, rely on *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 909 N.E.2d 848 (2009), which addresses the Illinois Uniform Deceptive Trade

---

[19] ECF No. 73, p. 25.

Practices Act ("UDTPA"). Plaintiffs respond that damages are available under the ICFA, citing 815 ILCS § 505/10a.

The arguments in the parties' briefs are like ships passing in the night. Perhaps that is because Plaintiffs' Claim 9, although titled under the ICFA, *also* cites to the UDTPA. (Complaint, ¶ 131.) But in footnote 13 of Plaintiffs' response they assert they are seeking relief under the ICFA not the UDTPA. (ECF No. 80, p. 24, n.13.) Nonetheless, because both acts were alleged, the Court examines the claim under the ICFA and UDTPA.

First, the Court agrees with Defendants that only injunctive relief is available under the UDTPA, as stated in *Kensington's Wine Auctioneers & Brokers, Inc.*, 909 N.E.2d at 857 (citing 815 ILCS 510/3), and that Plaintiffs failed to plausibly allege they may obtain such relief. Accordingly, to the extent Claim 9 is based on the UDTPA, that part of the claim is dismissed.

Next, the Court agrees with Plaintiffs that economic damages are recoverable under the ICFA. *See* 815 ILCS 505/10a ("The court, in its discretion may award actual economic damages or any other relief which the court deems proper…."). Accordingly, Defendants' request for dismissal of the ICFA claim based on the argument that only injunctive relief is available is denied.

***Wisconsin Act.*** Defendants argue that, "as shown," Plaintiffs cannot establish the requirement of "a false, deceptive, or misleading statement to the public that cause pecuniary loss." Defendants' two-sentence argument apparently relies on their prior arguments relating to the California Statutory Claims. However, because the Court has found Plaintiffs have plausibly alleged at least a CLRA claim for damages, the Wisconsin Act is not subject to dismissal based on Defendants' prior arguments.

### H. Leave to Amend

In closing, Plaintiffs request the Court for leave to amend to the extent it grants Defendants' Motion in any respect. This request is insufficient for several reasons. First, a single sentence is hardly a sufficient motion. *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) ("[W]e held it insufficient where the plaintiffs made a bare request in their response to a motion to dismiss 'that leave be given to the Plaintiffs to amend their Complaint.'" (citation omitted)); *see also* Fed. R. Civ. P. 7(b) (setting forth general requirements for motions). Second, under this District's Local Rules, "[a] motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document." D.C.COLO.LCivR 7.1(d). Finally, another Local Rule 15.1 requires the party seeking to amend to confer where required and to attach a copy of the proposed amendment which strikes through (e.g., ~~strikes through~~) the text to be deleted and underlines (e.g., underlines) the text to be added. Accordingly, Plaintiffs' request is denied.

### IV.    CONCLUSION

Based on the foregoing, it is **ORDERED**

(1) That Claim 4 (Conversion) is hereby DISMISSED;

(2) That the Motion to Dismiss is GRANTED as follows, and the following claims are DISMISSED:

    (a) Claim 2: Breach of Implied Duty of Good Faith and Fair Dealing;

    (b) Claim 3: Unjust Enrichment;

    (c) Claim 5: Money Had and Received;

    (d) Claim 6: Violation of California Unfair Competition Law;

(e) Claim 7: Violation of California Consumer Legal Remedies Act – but only as to the request for *nonmonetary* relief;

(f) Claim 8: Violation of California False Advertising Law; and

(g) Claim 9: Violation of Illinois Consumer Fraud and Deceptive Business Practice Act – to the extent Plaintiffs seek relief under the Illinois Uniform Deceptive Trade Practices Act;

(3) That the Motion to Dismiss is DENIED as to the following claims:

(a) Claim 1: Breach of Contract;

(b) Claim 7: Violation of California Consumer Legal Remedies Act – but only as to the request for *monetary* relief;

(c) Claim 9: Violation of Illinois Consumer Fraud and Deceptive Business Practice Act ("ICFA") – to the extent Plaintiffs seek relief under the ICFA; and

(d) Claim 10: Violation of Wisconsin Deceptive Trade Practices Act; and

(4) That, to the extent Plaintiffs seek leave to amend, the request to amend is DENIED.

DATED this 25th day of June, 2021.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge